613 P.2d 852

**The STATE of Arizona, Appellee,**

v.

**Joseph Patsy GALIOTO, Appellant.**

**No. 2 CA–CR 1861.**

Court of Appeals of Arizona,
Division 2.

May 27, 1980.

Rehearing Denied July 2, 1980.

Review Denied July 15, 1980.

**190**

Robert K. Corbin, Atty. Gen., by William J. Schafer III, Asst. Atty. Gen., and O. E. Jack Roberts, Phoenix, for appellee.

Frederick S. Klein, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant, charged with second-degree arson, arson with intent to defraud insurer and making a false insurance claim, was found guilty of making the false claim. He gives three reasons his conviction should be reversed: (1) The trial court erred in refusing certain instructions; (2) he was forced to appear at trial in prison clothing, and (3) prosecutorial misconduct.[1] We affirm.

Appellant was the manager of The New Broadway Theatre. In April 1977 he contacted Mr. Larry Reed, an insurance agent, in order to secure fire and casualty coverage for the contents of the theater. Appellant told Mr. Reed that the value of the contents was $100,000. Mr. Reed secured a contract with Ohio Casualty Insurance Company of Ohio (Ohio) which provided a maximum payment of $35,000 for a $108,000 loss. Any lesser loss was payable in an amount equal to $35/108$ of the loss.

Mr. Reed was in the process of applying for an additional $65,000 with another company when the theater was damaged by a fire which occurred on May 23, 1977.

Appellant submitted three proofs of loss. The first, dated July 14, 1977, was rejected by Ohio on the ground of incompleteness. On October 6, 1977, appellant filed a second proof of loss wherein he claimed the actual cash value of the property at the time of the loss was $160,948 and that his loss was in the same amount. After Ohio refused to accept this proof of loss, a third one was filed by appellant on January 6, 1978. In it appellant claimed the actual cash value of the property was $78,632 and that his loss was $86,495.84 which included an amount for business interruption.[2] This third proof of loss was rejected because appellant had been indicted for arson.

At trial, the state put on evidence that there was only $25,000 to $30,000 invested in the business when it was turned over to appellant and that appellant had attempted the year before to insure the contents for $25,000. There was also extensive testimony as to individual items and groups of items that showed the inventory accompanying the proofs of loss overstated their value.

Appellant requested the following instructions:

"Defendant's Requested Instruction No. 12

Mere puffing or exaggeration of qualities, usefulness or value of an article does not constitute a false representation and, therefore, cannot support a charge of

---

1. Appellant was also charged, in the alternative, with a fraudulent scheme or artifice under A.R.S. Sec. 13-320.01.

2. The appellant's policy with Ohio also included a maximum of $8,000 for business interruption.

fraudulent scheme or artifice or fraudulent insurance claim.

Defendant's Requested Instruction No. 14

"Fraud consists of the making by the person accused of a material, that is, significant, false representation, knowing it to be false, or making it recklessly without knowledge of its truth, with the intent that it should be acted upon, with the person to whom the representation is made being ignorant of its falsity, having a right to rely upon it, and relying upon its truth, with resulting injury to the person relying."

Appellant contends the trial court erred in refusing these instructions. We do not agree.

Appellant was convicted of violating A.R.S. Sec. 44–1220 which provided, prior to its amendment:

"A person who presents a false or fraudulent claim or proof in support of such claim, upon a contract of insurance for the payment of any loss, or who prepares, makes or subscribes to an . . . affidavit or proof of loss . . . with intent to present or use it or allow it to be presented or used in support of such claim, shall be punished by imprisonment in the state prison . . . ."

Our statute was adopted from California. See Calif.Ins.Code, Sec. 556 (West 1972). California cases have held that the gravamen of the offense is the accused's intent to defraud. *People v. Grossman*, 28 Cal. App.2d 193, 82 P.2d 76 (1938); *People v. Turley*, 119 Cal.App.2d 632, 259 P.2d 724 (1953); *People v. Kanan*, 208 Cal.App.2d 635, 25 Cal.Rptr. 427 (1962); *People v. Scofield*, 17 Cal.App.3d 1018, 95 Cal.Rptr. 405 (1971).

California Jury Instructions—Criminal (CALJIC), Secs. 15.40 and 15.41 cover the elements of presenting a fraudulent claim for insurance payment and fraudulently supporting an insurance claim. CALJIC 15.40, Fraudulent Claim for Insurance Payment states, inter alia:

"In order to prove the commission of such crime, each of the following elements must be proved:

1. That a person presented or caused to be presented a false or fraudulent claim for payment of a loss covered by insurance, and

2. That such person acted with specific intent to defraud."

CALJIC 15.41, Fraudulently Supporting an Insurance Claim, states the following:

"In order to prove the commission of such crime, each of the following elements must be proved:

1. That a person [prepared, made or signed] a document which he intended to use in support of a false or fraudulent claim for payment of a loss covered by insurance, and

2. That such a person acted with specific intent to defraud."

The record shows that the trial court essentially followed the CALJIC instructions.

Furthermore, the trial court gave the following additional instruction:

"A statement, claim, or document is fraudulent if it was falsely made or made with reckless indifference to its truth or falsity, with intent to deceive.

To be made with reckless indifference, a statement must be made without regard to whether it is true or false, or be a statement of fact implying knowledge where there is no knowledge.

* * * * * *

One who acts with honest intention is not chargeable with fraudulent intent. One who expresses an opinion honestly held by him, or a belief honestly entertained by him, is not chargeable with fraudulent intent even though such opinion is erroneous and such belief is a mistaken belief.

Evidence which establishes only that a person made a mistake in judgment, or an error in management, or was careless, does not establish fraudulent intent. In order to establish fraudulent intent on the part of a person, it must be established that such person knowingly and

intentionally attempted to deceive another." [3]

As evidenced by appellant's proferred instructions, he is under the mistaken belief that the elements and proofs required in a civil action for fraud and deceit are required to be proved by the state in a criminal case under the statute. This in not correct. We are not dealing with a civil action by an insured against his insurer where in order for the insurance company to avoid a policy on the grounds of fraud or false swearing the proof of loss statement in question must be material. See 14 Couch on Insurance 2d, Sec. 49:441 (1965) and see Annot. 16 A.L.R.3d 774 (1967). The gravamen of the offense here is the intent to defraud. Fraud is an instance or act of trickery or deceit; an act of deluding; an intentional misrepresentation for the purpose of inducing another in reliance upon it to part with some valuable thing. There is no requirement that there be a material misrepresentation. A claim presented with a value much in excess of what was shown to be the actual value of the damaged property, has been held sufficient to sustain a prosecution. *People v. Kanan*, supra. Appellant apparently believed that the elements of a civil action for fraud apply in this criminal prosecution. For example, defendant's Instruction No. 14 states that the fraud involved must be relied upon and result in injury. This is not correct.

At the time of trial appellant was in the Pima County Jail. Appellant, during the course of the trial, made two motions for mistrial based upon the following grounds. (1) He was seen by jurors being escorted to court by a deputy sheriff; (2) a juror had seen him in handcuffs outside the courtroom and (3) a deputy had discussed appellant's custody in the jury's presence. Citing *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) as analogous, appellant contends that defendant's right to a fair trial secured by the Fourteenth Amendment to the United States Constitution is violated whenever the state gives the jury the impression that the defendant is in custody. We do not agree. In *Estelle v. Williams*, supra, the Supreme Court held that the state cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes. However, we know of no case that says that it is a violation of the Fourteenth Amendment for the state to guard the defendant to and from the jail and while he is in the courtroom. As far as the handcuffs are concerned, appellant has failed to show any prejudice from the fact that a juror may have seen him in handcuffs outside the courtroom. See *State v. Sherron*, 105 Ariz. 277, 463 P.2d 533 (1970); *State v. McDonald*, 111 Ariz. 159, 526 P.2d 698 (1974); and see also, Annot. 90 A.L.R.3d 17 (1979).

A deputy sheriff apparently stated, in the jury's presence, that the court should issue an order to the jail providing that appellant should be allowed to shave at the jail. This statement did not violate appellant's Fourteenth Amendment rights and, in any event, appellant has shown no prejudice as a result of the remark.

Prior to the trial appellant made a motion in limine to prevent the state from introducing evidence concerning a prior insurance policy taken out with the Kirby-Smith Agency. The trial court did not rule on the motion and stated that it would hold an evidentiary hearing at a later time to determine whether or not the evidence would be admissible. In his opening statement the prosecutor mentioned this policy and told the jury that it had been cancelled. Appellant moved for a mistrial which was denied. The trial court later ruled that all the evidence concerning this policy was admissible except the fact that it had been cancelled. When the trial court originally denied the motion for mistrial, it told appellant that if it found that the evidence was not admissible then it would again consider

3. For cases dealing generally with the crime of filing a false insurance claim, see 19 Appleman, Insurance Law and Practice, Sec. 10534 (1964);

14 Couch on Insurance 2d Sec. 49:432 (1965); 44 C.J.S. Insurance Sec. 90 (1945).

the motion for mistrial. When the trial court did make its later ruling, appellant did not renew his motion for mistrial. Assuming, arguendo, that there was no necessity for appellant to again move for a mistrial, we are unable to perceive any prejudicial error resulting from the trial court's failure to grant a mistrial.

During closing argument, the prosecutor said to the jury:

"Furthermore, every time there is a fraudulent insurance claim, every time a company has to pay off on a fire that's false, it comes out of your pocket and out of my pocket. Our premiums go up. And if it is not our premiums, it's a businessman's premium. And then when you go to buy your groceries or go to eat at a restaurant, you pay the price, and I pay the price."

The trial court interrupted the prosecutor, stated that he did not believe this was a proper argument and instructed the jury to disregard it. At the first opportunity provided by the court thereafter, appellant moved for a mistrial. Appellant contends that the trial court erred in not granting the motion. We do not agree. Generally, whether or not improper argument constitutes ground for mistrial is a matter for the trial court's discretion. The trial court here promptly interrupted the prosecutor and instructed the jurors to disregard the argument. Furthermore, the trial court instructed the jury that arguments of counsel were not evidence. Under these circumstances we are unable to say that the trial court abused its discretion.

Affirmed.

HATHAWAY, C. J., and RICHMOND, J., concur.