680 P.2d 206

**The STATE of Arizona, Appellee,**

v.

**David Alfred WARGO, Appellant.**

**No. 2 CA–CR 3173.**

Court of Appeals of Arizona, Division 2.

April 10, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Albert L. Blankenship, Jr. and Kathleen A. Mayer, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Defendant was convicted by a jury of aggravated assault while armed with a deadly weapon and sentenced by the trial court to five years' imprisonment. The facts considered in the light most favorable

to upholding the jury's verdict are as follows.

The assault victim, Johnny Trejo, and his wife, Eloisa, and their two children were temporarily staying at a house in Florence, Arizona, which belonged to Tom Lopez, the victim's uncle. The defendant lived with Lopez at this residence. The victim testified that when he arrived home from work around 5:30 p.m. on May 8, 1981, he overheard a discussion between the defendant and Lopez about an individual named Mark. Apparently Mark had been at the residence earlier and the defendant thought that Lopez was having an affair with him. The defendant and Lopez then started arguing about the victim's children. After the argument the defendant went outside to the storage room and the victim saw him sniffing gasoline. The victim also testified that sniffing the gasoline seemed to calm defendant. The fact that defendant was sniffing gasoline was not unusual since the victim testified that he had seen defendant sniff gasoline many times before. When the victim went back into the house, his uncle asked him if the defendant was sniffing gas again.

About 6:15 p.m., the defendant came back into the house and started arguing again with Lopez about Lopez' supposed affair with Mark. The victim and his wife then decided not to stay in the house anymore but instead go to Tucson. They packed their car and started to leave around 8 p.m. At that time defendant started yelling at the victim's son. The defendant was still sniffing gasoline out of a Coors beer can. As the victim and his family were about to leave, Eloisa sent the victim into the house to get some covers and shoes that she had forgotten. Defendant was inside the house and had turned off the lights and shut the door. The victim entered by pushing the front door and walking into the house. He saw defendant's shadow coming out of a hall closet and as he said, "David," the defendant shot him in the shoulder. The victim's wife, who had exited the car and followed him into the house, screamed as she saw him fall. The defendant then fired again at the

victim but missed. The defendant pointed the gun at the victim again but the defendant's mother, who lived two doors away, had entered the house, and pushed the defendant away before he could fire the gun a third time. The victim's wife and children ran to a neighbor's house after the shooting and the victim got into his own car and drove himself to the hospital. It was the prosecution's theory at trial that appellant's sniffing of the gasoline fumes led him to the violence.

The defendant's theory was self-defense. He testified that Eloisa was drunk before her husband came home from work. He got into an argument with the victim and his wife when he criticized the behavior of their children. The victim got mad and threatened to "punch out" the defendant. The defendant told the victim and his wife that he was going to call the police if they did not leave and the victim threatened him again. Lopez convinced the defendant not to call the police but the victim's wife kept egging the victim on and the victim threatened to "blow the defendant away." When this threat was made the victim started walking back to a bedroom where the defendant kept two loaded handguns. At that point, defendant left and went to his mother's house. He testified that he never sniffed any gasoline fumes that night.

The defendant returned to the residence about 15 minutes later and saw the victim sitting in his car in the carport with the motor running. The defendant entered the house through the back door, locked the doors and turned off the lights but he did not lock the front door because that door was nailed shut. According to the defendant, the victim started to drive away but then swung back into the driveway, got out of the car shouting, "Wargo, I'm going to kill you," ran across the yard, and hit the front door. Defendant then ran into the bedroom and got his revolver. He fired a shot across the living room in order to scare the victim. He heard the victim still coming through the doorway so he fired a second warning shot. When the defendant turned on the lights, he saw the victim

lying on the couch bleeding. Further facts will be set forth as they relate to the issues under discussion.

■ During the cross-examination of the defendant, the prosecutor elicited testimony that defendant wanted to file charges against the victim for attempted assault and attempted murder following the shooting. The defendant also testified that he wanted to file charges against the prosecutor for false arrest because he felt he should not be the person on trial. Later, Tom Lopez was allowed to testify that appellant once assaulted him with a broken hoe handle. During this fight Lopez banged the defendant's head on the concrete. Lopez then filed charges against the defendant but then dropped them because he had provoked the fight by hitting defendant first. Lopez denied dropping the charges because the defendant wanted to file charges against Lopez' niece, Carol Lopez. The prosecutor convinced the trial court that the evidence of the hoe assault and the events subsequent to it were admissible under Rule 404(b), Arizona Rules of Evidence, 17A A.R.S., to show a modus operandi, plan and course of conduct similar to what he did in this case. In other words, after he assaults somebody, he charges the victim with the crime in order to get them to drop the charges against him. We do not agree with the state's theory.

Rule 404(b) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The reason other crimes, wrongs, or acts are admissible under 404(b) is because they tend to prove or establish the crime for which the defendant is charged. The hoe incident is not of this quality. It does not tend to prove any of the elements of the crime for which defendant stood charged and the trial court erred in admitting such evidence.

■ The next question that arises is whether this error was harmless. The issues in this case were hotly contested. It was essentially a swearing contest with the victim and his wife on one side and the defendant, Lopez. and the defendant's mother on the other side. We are unable to say that the evidence of the hoe incident had no effect on the jury's verdict and therefore are constrained to reverse. We therefore shall discuss those issues which may arise again in the case of a retrial.

■ Lopez also testified as to an act that occurred after the assault in this case. It concerned an outburst that defendant had after sniffing gasoline fumes. During this outburst, appellant broke two doors in Lopez' residence and made a number of holes in the wall. Contrary to the defendant's contention, we believe this evidence was admissible to show that sniffing gasoline fumes tended to make defendant violent, thereby negating his contention that he did not deliberately aim at the victim in this case but that the victim walked into defendant's path of fire. See Rule 404(a), Arizona Rules of Evidence, 17A A.R.S.

■ Defendant contended that the trial court erred in failing to grant his motion in limine to preclude the state from introducing into evidence the homosexual relationship between himself and Lopez. We do not agree. Evidence of homosexuality or of a homosexual relationship is admissible to prove the bias, interest or motive of a witness. Rule 404(b), Arizona Rules of Evidence, 17A A.R.S. See *People v. Peters*, 23 Cal.App.3d 522, 101 Cal.Rptr. 403 (1972). Lopez was a critical witness in this case. He corroborated defendant's testimony. The relationship between the two was highly probative.

■ Defendant also contends that the trial court erred when it denied his motion in limine asking the court to prevent the state from introducing into evidence the fact that he had sniffed gasoline on occasions prior to the night in question. We do

not agree. Defendant, Lopez and defendant's mother all denied that the defendant had been sniffing gas on the night of the assault. The evidence of the defendant's gas-sniffing proclivity was admissible to show why he acted the way he did on the night in question. See Rule 404(b), Arizona Rules of Evidence, 17A A.R.S.

■ Defendant contends that the trial court erred in failing to conduct a voluntariness hearing prior to allowing the prosecutor to impeach defendant with statements which he had previously made to law enforcement officials. Although a defendant is entitled to a hearing outside the presence of a jury to determine the voluntariness of his statements, he waives that right by failing to make timely request for a voluntariness hearing. *State v. Alvarado*, 121 Ariz. 485, 591 P.2d 973 (1979). In the instant case, defendant failed to request the hearing at least 20 days prior to trial and it was therefore waived.

■ Defendant contends the trial court erred in failing to give its instruction No. 13, commonly known as the "Willits Instruction," which reads:

"If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed or allowed to be destroyed any evidence whose contents or quality are at issue, you may infer that the true fact is against the State's interest."

Defendant sought this instruction because the police had taken pictures of the scene which they were later unable to produce since the film failed to develop. Defendant contends that the pictures were important because they would show the exact location of the bullet holes, the location of various items in the room and that the front door had been nailed shut and was broken when the victim rushed the door. Defendant contends that the state first destroyed the photographs by failing to develop them and also destroyed them by throwing away the negatives without preserving them for the defendant's inspection. We do not agree.

There are two reasons why the trial court was correct in rejecting the instruction. First, the witnesses testified as to the location of the bullet holes and two police witnesses testified that there appeared to be nails in the front door. More important, the location of the bullet holes and the location of various items in the room was neither crucial nor at issue. Second, there was no evidence that the police specifically took a picture of the doorway demonstrating the existence of the nails and the fact that the door had been nailed shut.

■ Defendant next contends that the trial court erred by failing to give the following instructions 14 and 15:

"It is a felony in Arizona for a person to enter unlawfully into the residential structure of another. It is a misdemeanor in Arizona for a person to damage the property of another person and you may consider this when you consider whether David Wargo was reasonably afraid of Johnny Trejo and whether he acted reasonably as a result of that fear."

\* \* \* \* \* \*

"In considering the reasonableness of David Wargo's fear of physical harm you may consider the fact that he entered a home with the intent to commit an assault upon an occupant of that house amounts to aggravated assault under Arizona law."

The trial court correctly refused both of these instructions. First of all, instruction No. 15 is not even a correct statement of the law. A person does not commit aggravated assault by entering a house with the intent to commit assault upon the occupant of the house. He commits aggravated assault if he commits the assault after entering the private home of another with the intent to commit the assault. A.R.S. § 13-1204(A)(3). For that reason alone the trial court was correct in refusing the instruction. A.R.S. § 13-405 provides that a person is justified in threatening or using deadly physical force, as was the case here, if he would be justified in threatening or using physical force against another when

and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force and when and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use of unlawful deadly physical force. Instruction No. 14 apparently would allow the defendant to use or threaten deadly physical force if somebody in his house became angry and threw a tea cup on the floor. Such is clearly not the law. Instruction No. 14 also would allow somebody to use deadly physical force by the mere fact that a person enters his home by trespass. This also is clearly not the law. The trial court did not err by refusing to give instruction No. 14.

Reversed and remanded for a new trial.

BIRDSALL, C.J., and HATHAWAY, J., concur.