995 P.2d 705

The STATE of Arizona, Appellee,

v.

Alex Cruz MILLS, Appellant.

No. 2 CA–CR 96–0200.

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 25, 1999.

Redesignated as Opinion and Publication
Ordered April 14, 1999.

Review Denied Feb. 8, 2000.

Grant Woods, The Attorney General By Paul J. McMurdie, Christopher E. Avery, and Joseph T. Maziarz, Phoenix, Attorneys for Appellee.

Constance L. Trecartin, Tucson, Attorney for Appellant.

## OPINION

FLÓREZ, Judge.

¶ 1 Following a jury trial, appellant Alex Cruz Mills was convicted of the murder of his estranged wife, N., and was sentenced to a mitigated term of twenty-five years to life in prison. Appellant raises four issues on appeal, none of which merits reversal.

## FACTS

¶ 2 We view the evidence in the light most favorable to sustaining the verdict and resolve all inferences against appellant. *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593 (1992). Several years before N.'s murder, appellant had received an $850,000 settlement from an automobile accident. Approximately one year later, N. filed a petition for dissolution of the marriage. During the prolonged dissolution litigation, appellant claimed that he was entitled to the remaining settlement proceeds.

¶ 3 While the dissolution action was pending, appellant provided large quantities of illegal drugs to Frank Estrella for Estrella to sell. In one transaction, Estrella lost a kilogram of cocaine, and appellant claimed Estrella owed him $10,000 for it. Upset with the dissolution proceedings, appellant arranged for Estrella to murder N. because "she [was] taking everything [he] own[ed]." He insisted Estrella "owe[d]" him for losing the cocaine.

¶ 4 In February 1993, Estrella went to N.'s residence and, in the presence of appellant's children, fatally shot N. in the chest. Before he left, Estrella took a bracelet from a table to prove he had been in N.'s home. Estrella paged appellant, who then met him at a nearby grocery store. When Estrella gave appellant the bracelet, appellant smiled and handed Estrella $4,500 in cash.

¶ 5 Approximately one year later, police investigators discovered information implicating Estrella in N.'s murder. Estrella confessed and inculpated appellant, leading to appellant's arrest and conviction.

## SECURITY RESTRAINTS

¶ 6 Appellant contends that the trial court erred in denying his motions for mistrial and for new trial, claiming his due process rights were violated because some jurors observed him in security restraints outside the courtroom and because he was restrained inside the courtroom. We review the denial of a motion for mistrial and a denial of a motion for new trial for an abuse of discretion. *State v. Hansen,* 156 Ariz. 291, 751 P.2d 951 (1988) (mistrial); *State v. Hickle,* 133 Ariz. 234, 650 P.2d 1216 (1982) (new trial).

¶ 7 Appellant's motion for mistrial was based on two incidents in which some jurors observed detention officers escorting him in restraints to the courtroom. His motion for new trial was based on those two incidents and the additional claim that he was unconstitutionally restrained while he was inside the courtroom in the presence of the jury.

¶ 8 To warrant a mistrial, appellant was required to demonstrate that he suffered prejudice from the jurors' brief, inadvertent viewing of him in restraints outside the courtroom. *State v. Apelt,* 176 Ariz. 349, 861 P.2d 634 (1993); *State v. Johnson,* 147 Ariz. 395, 710 P.2d 1050 (1985); *State v. Galioto,* 126 Ariz. 188, 613 P.2d 852 (App.1980). "The question is whether the defendant was preju-

diced by what the jury saw, not the mere fact that it was seen." *Johnson*, 147 Ariz. at 399, 710 P.2d at 1054.

■ ¶ 9 The record shows that appellant reported to the court during the trial that on two occasions, one or more jurors had observed him in physical restraints outside the courtroom. Following the first incident, the court considered the type of restraints used outside the courtroom a "security issue" in which it was "not getting involved," but ordered "everybody [to] take every precaution and make sure it [did] not happen again." The court refused appellant's request that it interview the juror who saw him about the incident and appellant's counsel acknowledged that the incident may have been insufficient to cause a mistrial. Appellant mentioned this incident again seven days later. The court asked appellant's counsel for suggestions to address the situation and he responded, "I don't know, ask [the juror] what she saw and make sure that it does not influence her in any way in this case ... unless you want to talk to the rest of the jurors about it." The state made no objection and the court took appellant's suggestion under advisement.

¶ 10 On the fourteenth day of trial, another juror saw appellant in restraints outside the courtroom. Counsel again complained. The court responded that it would "ask the bailiff to be more diligent to make sure that it [didn't] happen again." Appellant asserted he was "very prejudic[ed]," but did not ask to voir dire the second juror. The court commented that "the leg brace itself does not importune [sic] to the jury that [appellant] is dangerous or anything." Ultimately, the jurors were not questioned because the court determined that an "interview of the jurors would do more harm than do good," a determination well within the trial court's discretion. *Apelt*.

¶ 11 After this second incident, the court, not appellant, raised the issue of a motion for mistrial:

THE COURT: Your point [that it is "very prejudicial to have him walking around with a leg brace on that he's some kind of a really bad character"] is made for the record, Mr. Bloom. We'll make every endeavor to stop it from happening again.

But if you had made a motion for a mistrial, the Court would have denied the motion.

MR. BLOOM: Consider it done, Judge.
THE COURT: Consider it denied.

¶ 12 Appellant made no offer of proof to establish his prejudice; although he did request that the court voir dire the jurors who saw him in restraints outside the courtroom, he did not request permission to do so; and, he did not object when the court ultimately declined to conduct voir dire of the jurors. Additionally, he did not seek to make a post-trial evidentiary record. *Apelt*. Based on the record before this court, we conclude that the trial court did not err in denying appellant's motion for mistrial based on this ground.

■ ¶ 13 Appellant's claim that he was deprived of a fair trial by having been in shackles or a leg brace inside the courtroom while the jurors were present was not preserved for appeal by appellant's oral motion for mistrial. On the first day of jury selection when appellant initially questioned the necessity of his being in shackles, the guard suggested a "leg brace concealed under clothing." Appellant did not reassert his objection to the guard's proposal for a concealed leg brace or to the continuation of jury selection that day with appellant in shackles. At the end of that day, the court reiterated its instruction that appellant be unshackled and unhandcuffed in the courtroom "when ... we start the trial," but the court did not order that no restraints be used, as appellant now asserts. During the remainder of the trial, while in the courtroom appellant wore a leg brace concealed under his clothing; he never objected to that restraint. He never alleged during the trial, nor does he claim on appeal, that any juror observed the restraint in the courtroom. Thus, when viewed in context, appellant's oral motion for mistrial did not encompass appellant's restraint while in the courtroom. Having failed to preserve this issue, appellant has waived it. *State v. Nelson*, 129 Ariz. 582, 633 P.2d 391 (1981). In any event, an unseen "restraint could not have affected the

presumption of innocence." *Castillo v. Stainer*, 983 F.2d 145, 149 (9th Cir.1992), amended, 997 F.2d 669 (9th Cir.1993).

¶ 14 Nor can we say the trial court abused its discretion in denying appellant's motion for a new trial. In his motion for a new trial, appellant raised the issue of his having been seen in leg restraints both outside and inside the courtroom. A motion for a new trial may be granted on any of the grounds stated in Rule 24.1(c), Ariz. R.Crim. P., 17 A.R.S. Although appellant has not specified which of the grounds he relies on, he appears to be basing his arguments on Rule 24.1(c)(4) or (5), which provide:

c. Grounds. The court may grant a new trial for any of the following reasons:

. . . .

(5) For any other reason not due to the defendant's own fault the defendant has not received a fair and impartial trial.

¶ 15 In his motion for a new trial, appellant argued that the presumption of innocence was impacted when he was "physically restrained in the courtroom." "The decision to restrain a prisoner *in court* rests within the discretion of the court." *Johnson*, 147 Ariz. at 399, 710 P.2d at 1054 (emphasis in original). Appellant contends the state failed to show the necessity of the in-court restraint. Had appellant made a proper objection at trial, however, the state would have been required to establish "some reason" for the restraint in the courtroom. *State v. Reid*, 114 Ariz. 16, 22, 559 P.2d 136, 142 (1976). Because appellant did not object, this issue is waived. Nelson. In any event, because there was no showing that jurors were aware appellant was wearing leg restraints in the courtroom, there was no basis for a new trial. *See State v. Miller*, 186 Ariz. 314, 921 P.2d 1151 (1996); *State v. McMurtrey*, 136 Ariz. 93, 664 P.2d 637 (1983).

¶ 16 Just as the court did not err in denying the motion for mistrial based on appellant's having been restrained both outside and in the courtroom, it did not abuse its discretion in denying his motion for a new trial.

## PRELIMINARY HEARING VIDEOTAPE

¶ 17 Appellant next contends that the trial court erred in allowing the state to impeach Estrella at trial with the entire videotape of his preliminary hearing testimony, rather than with specific questions and answers read from a transcript. At the preliminary hearing, Estrella had testified that appellant forced him to shoot N. because Estrella owed appellant $10,000 for the lost cocaine; that after he shot N., he took a bracelet from the house as proof that he had been there; and that he then met appellant and gave him the bracelet and gun and received $4,500. At trial, however, Estrella testified that he drove an acquaintance named Manuel to N.'s house, but that Estrella did not enter the house and he did not know that Manuel had killed N. until he heard about the shooting on the evening news. After hearing Estrella's trial testimony, the court ruled that the videotape was admissible in its entirety because Estrella gave a "totally inconsistent statement to what he gave at the preliminary hearing."

¶ 18 The trial court "is invested with considerable discretion" to determine whether evidence is admissible. *State v. Hensley*, 142 Ariz. 598, 602, 691 P.2d 689, 693 (1984). We will not disturb a court's determination absent an abuse of discretion. *Id.* The videotaped testimony may be admissible under Rule 801(d)(1)(A), Ariz. R. Evid., 17A A.R.S., which provides "[a] statement is not hearsay if—. . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony." Additionally, such testimony was admissible under Rule 19.3(c)(1)(i) and (ii), Ariz. R.Crim. P., 17 A.R.S., which provides that

(1) [s]tatements made under oath by a party or witness during a previous judicial proceeding . . . shall be admissible in evidence if:

(i) The party against whom the former testimony is offered was a party to the action or proceeding during which a statement was given and had the right and opportunity to cross-examine the declarant with an interest and motive simi-

lar to that which the party now has ... and

    (ii) The declarant is ... present and subject to cross-examination.

¶ 19 The court found that the videotape met the requirements of the foregoing rules. Appellant does not disagree but argues that by allowing the state to present Estrella's trial testimony and the entire videotape, "the state was allowed to put its major witness on twice." Although this is true, the state could do so only because Estrella's testimony at trial was, as appellant conceded at oral argument, totally inconsistent with his prior testimony. This is precisely the kind of circumstance in which Rules 801 and 19.3 allow such testimony to be admitted. Because of the scope of the inconsistencies, the trial court in its discretion allowed the jury to hear and see the entire preliminary hearing testimony. *See Hensley.*

¶ 20 Appellant also argues that the court erred in permitting the state to use the videotape on the ground that it was "so different" and "emphasized [Estrella's] testimony to a degree that was different from any other witness'[s] testimony." We fail to see the logic of this argument. The videotape is the most reliable method of introducing a prior inconsistent statement because the jury can observe the declarant's demeanor and hear the declarant's tone, whereas the jury can do neither when the prior testimony is read from a transcript. *See Nunn v. State,* 845 P.2d 435 (Alaska App.1993) (videotaped police interrogation used for impeachment).

¶ 21 Appellant further contends that the use of the entire videotape was error because it would then "be used as substantive evidence by the jury." The argument is meritless. The jury may consider prior inconsistent statements as impeachment and as substantive evidence. *State v. Skinner,* 110 Ariz. 135, 515 P.2d 880 (1973).

¶ 22 Appellant also argues that use of the videotape violated his equal protection rights under the Fourteenth Amendment to the United States Constitution and article II, § 13, of the Arizona Constitution because only the state's witnesses testify at a preliminary hearing and the defendant generally cannot call witnesses. Appellant did not raise this argument in the trial court and has thus waived all but fundamental error. *See State v. Lopez,* 170 Ariz. 112, 822 P.2d 465 (App.1991) (constitutional claims waived by failing to make the argument below); *see also State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981). Even if appellant's argument were not waived, he has failed to make a preliminary showing that he was denied a fundamental right or that he is a member of a suspect class. *See Lopez.* This argument is without merit.

## PRIOR ACTS EVIDENCE

¶ 23 Appellant next argues that the trial court erred in denying his pretrial motion to exclude evidence under Rule 404(b), Ariz. R. Evid., 17A A.R.S., that he cut the brake line of N.'s car. In his motion, appellant challenged the admission of testimony by Jesus O. that in December 1992, he and N. had used N.'s truck to attend a hearing in the dissolution proceeding involving N. and appellant. When Jesus met N. later that day, N. told him the truck had no brakes. Jesus then took the truck to a mechanic for repairs. After the brake line was replaced, Jesus kept the severed line, which was admitted in the trial. We review the trial court's admission of evidence challenged under Rule 404(b) for an abuse of discretion. *State v. Gulbrandson,* 184 Ariz. 46, 906 P.2d 579 (1995).

¶ 24 Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts" to prove a person's character, but permits such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). To be admissible under this rule, evidence of the other acts must be admitted for a proper purpose and must be logically or legally relevant. *State v. Hyde,* 186 Ariz. 252, 921 P.2d 655 (1996), *cert. denied,* 519 U.S. 1153, 117 S.Ct. 1091, 137 L.Ed.2d 224 (1997); *Gulbrandson.* In addition, the trial court must determine that the probative value of the evidence is not sub-

stantially outweighed by the danger of unfair prejudice and must, if requested, give a proper limiting instruction. Ariz. R. Evid. 403; *Gulbrandson.* Finally, the proponent must show by clear and convincing evidence that the other acts actually occurred and that the defendant committed them. *State v. Terrazas,* 189 Ariz. 580, 944 P.2d 1194 (1997).

¶ 25 In his motion to exclude this evidence, appellant argued that there was insufficient evidence to connect him with the severed brake line and that the mechanic was not qualified to testify as an expert. On appeal, however, he has abandoned those arguments and now contends that the trial court erred in admitting the prior act evidence for an improper purpose and that the evidence was unfairly prejudicial and of marginal relevance. He argues that the jurors' hearing he had told Laura, appellant's then girlfriend, he had cut N.'s brake line prejudiced his defense that he loved N. and had not been involved in her murder. He also asserts the prior act was used for the impermissible purpose to show he "acted in conformity with his prior actions when he was involved in her murder."

¶ 26 Appellant relies on *State v. Hughes,* 189 Ariz. 62, 938 P.2d 457 (1997). In *Hughes,* the trial court allowed the state to present evidence of the defendant's drug dealing, verbal and physical threats to others, and various other violent acts, including three arsons. *Id.* The supreme court reversed the conviction and remanded the case for a new trial, finding it could not "say beyond a reasonable doubt that the jury's verdict was not influenced by these errors." *Id.* at 72, 938 P.2d at 467. Appellant fails to show how *Hughes* supports his argument that the prior act evidence against him was admitted for an improper purpose or was unduly prejudicial. Moreover, *Hughes* is clearly distinguishable. There, the victims of the other acts were persons other than the victim of the offense for which the defendant was on trial. In contrast, N. was the victim of both. As the state points out, Arizona courts have held that evidence of prior acts against the victim of the charge being tried may be admitted if it is for a proper purpose. *Gulbrandson* (motive and intent); *State v.*

*Williams,* 183 Ariz. 368, 904 P.2d 437 (1995) (motive). We disagree that the prior act evidence was admitted to show appellant "acted in conformity with his prior actions in attempting to harm N[.]"; clearly, the prior act of cutting the brake line, which occurred approximately two months before N.'s murder, was properly admitted to show appellant's intent and motive to eliminate N. as a source of difficulty in his dissolution proceeding. The evidence was also properly admitted to rebut appellant's defense that "he loved N[.], he wanted to get back together with her, he would not want any harm to come to her and therefore, he was not involved in her murder."

¶ 27 Appellant further relies upon *State v. Wargo,* 140 Ariz. 70, 680 P.2d 206 (App. 1984), in which this court found that the trial court improperly admitted evidence that the defendant previously had assaulted a person unrelated to the charge being tried, to show a plan or course of conduct. We found that the prior act did not "tend to prove any of the elements of the crime for which defendant stood charged...." *Id.* at 73, 680 P.2d at 209. Unlike here, the prior act in *Wargo* was irrelevant. Ariz. R. Evid. 402. Similarly, appellant's reliance on *State v. Grannis,* 183 Ariz. 52, 900 P.2d 1 (1995), is misplaced because it, too, is distinguishable. In that case, our supreme court held that pornographic photographs collected by one of two murder codefendants were only "marginally relevant" but that their "probative value was substantially outweighed by the danger of unfair prejudice." *Id.* at 57, 900 P.2d at 6. *Grannis* does not involve the admissibility of evidence of a prior act under Rule 404(b).

¶ 28 Finally, appellant argues that the prior act evidence is unfairly prejudicial. Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Morris K. Udall et al., *Arizona Law of Evidence* § 82 at 167 (3d ed.1991), *quoting Federal Advisory Committee Note, Rule 403.* Thus, while the prior act evidence was prejudicial, it was not unduly so as it did not suggest a decision on an improper basis, but simply showed appellant's plan, motive, and intent. Moreover, even assum-

ing the evidence was improperly admitted, to show reversible error, appellant was required to establish a reasonable probability that the verdict would have been different had the evidence not been admitted. *State v. Grijalva*, 137 Ariz. 10, 667 P.2d 1336 (App.1983). Appellant has failed to do that.

¶ 29 We conclude that the trial court did not abuse·its discretion in admitting evidence of the brake hose incident under Rule 404(b).

### QUASHING OF SUBPOENA

¶ 30 Appellant subpoenaed Hector Hernandez to testify about the planning of the murder of N. Based on interviews with Hernandez, appellant expected Hernandez to testify that appellant's girlfriend Laura paid Sylvia Ybarra to kill N. and that Sylvia had "recruited Manuel who recruited Cisco [Estrella]" to kill N. Hernandez sought to quash the subpoena because he had two unrelated criminal cases on appeal, he had not testified at either of his trials, and he intended to invoke his Fifth Amendment privilege against self-incrimination at appellant's trial. U.S. Const. amend.· V. Appellant intended Hernandez's testimony to discredit Ybarra by showing that she was a cocaine-using drug dealer and to impeach Laura by showing she wanted N. killed. In short, appellant sought to attack the credibility of the state's witnesses through Hernandez to show that Ybarra and Laura had arranged for Manuel and Estrella to kill N.

¶ 31 Appellant asserts that the court violated his Sixth Amendment right to compulsory process by quashing the subpoena. We review for an abuse of discretion a court's decision to excuse from compulsory process a witness claiming a privilege against self-incrimination. *State v. Corrales*, 138 Ariz. 583, 676 P.2d 615 (1983); *State v. Maldonado*, 181 Ariz. 208, 889 P.2d 1 (App.1994). In exercising its discretion, the court must balance the defendant's Sixth Amendment right to compulsory process against the witness's Fifth Amendment privilege. *Corrales*. Generally, a defendant has a right to compel the attendance of witnesses whose testimony is "both material and favorable to the defense." *State v. McDaniel*, 136 Ariz. 188, 194, 665 P.2d 70, 76 (1983). This right is not

absolute, *id.*, and does not include the "right to compel a witness to waive his Fifth Amendment privilege." *United States v. Trejo–Zambrano*, 582 F.2d 460, 463 (9th Cir. 1978). If the witness validly asserts his Fifth Amendment privilege by showing "a reasonable ground to apprehend danger to the witness from his being compelled to answer," *United States v. Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir.1976); *see also State v. Cornejo*, 139 Ariz. 204, 677 P.2d 1312 (App. 1983), the defendant's right to compulsory process must yield to the witness's privilege not to incriminate himself. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984). "The Sixth Amendment right to call a witness must be considered in light of its purpose, namely to produce testimony for the defendant. Calling a witness who will refuse to testify does not fulfill the purpose...." *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir.1974). The court may conduct an in camera hearing to make that determination. *McDaniel; Cornejo*. Alternatively, the court may forego personally questioning the witness if the court can obtain by other methods the "extensive knowledge of the case," required by *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76; *see also Maldonado*. Only in the "narrow" circumstance where the "trial judge ... rules that the Fifth Amendment would be properly invoked in response to all relevant questions that the party calling the witness plans on asking" should the court allow the witness's Fifth Amendment privilege to defeat the defendant's Sixth Amendment right. *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76.

¶ 32 Appellant conceded at oral argument that he raises no issues about the procedure the court followed in developing its "extensive knowledge of the case," *id.*, which included examining three reports of transcripts of interviews with Hernandez and avowals by Hernandez's attorney that he had advised Hernandez to assert the Fifth Amendment privilege as to all questions. He argues only that "testimony [that] was material and favorable to [appellant]" was improperly excluded. He attacks the court's weighing of the competing interests of appellant's Sixth Amendment right and Hernandez's

Fifth Amendment privilege, focusing on the court's recognition that the direct examination of Hernandez by defense counsel would not have caused Hernandez to incriminate himself and emphasizing that the court was only "speculat[ing]" that the cross-examination by the state would have jeopardized Hernandez.

¶ 33  Ybarra had testified at Hernandez's trial and at appellant's trial. Hernandez was Ybarra's former live-in boyfriend. Appellant wished to undermine Ybarra's testimony for the state by attacking her through Hernandez's testimony about their relationship, Ybarra's protection by her "bodyguard" Manuel, her "recruit[ing] Manuel who recruited [Estrella]" to kill N., and her glee at the news of N.'s death.

¶ 34  To the extent the court's evaluation of the potential for violation of Hernandez's Fifth Amendment privilege is speculative, it is reasonable speculation based on the court's knowledge of the case. A witness asserting a Fifth Amendment privilege must be faced with real and substantial risks. *United States v. Paris*, 827 F.2d 395 (9th Cir.1987). Appellant's trial attorney had set out in detail the testimony he hoped to elicit from Hernandez. Additionally, the court was aware of the lack of finality of Hernandez's two drug convictions; Hernandez's assertion that Ybarra had set him up on his conviction involving fifty-two pounds of marijuana and that, upon any retrial, his statements about her may incriminate him and undermine his defense; that his testimony may provide the state with prior act evidence to his detriment in any new trial or retrial, with the potential for the prosecution to elicit self-incriminating testimony from Hernandez within the permissible and reasonable scope of cross-examination. The trial court clearly understood the jeopardy Hernandez faced should he undergo fierce cross-examination. The court stated "if [the state] asked some questions about this drug dealing during this time period, what he was doing with Ms. Ybarra and any activity he might have engaged in, those answers themselves might incriminate him and might, of course, hurt his case if he gets reversed on appeal." Certainly, Hernandez's risks were real and substantial.

¶ 35  In addition, although such testimony may not appear in a narrow sense to be incriminating to Hernandez, it could easily provide evidence the state could use to prosecute him on new and different charges. *See Maldonado* (privilege applies to answers that can be used to establish a link in evidence chain). Appellant claims that Hernandez "had been immunized from the time of the initial interview by [law enforcement] and never charged with any offense." The record simply shows that Hernandez had been accorded a "free talk," an interview with law enforcement in which, as explained to Hernandez, anything he "sa[id] about [N.'s] murder or any other crime, as long as he himself was not the shooter in [N.'s murder], nothing he sa[id] [would] be used against him." A free talk and immunity from prosecution are two different circumstances. Immunity may only be granted upon the state's written request and an order entered pursuant to A.R.S. § 13–4064. Moreover, "[t]he state exercises sole discretion in granting immunity to witnesses." *State v. Doody*, 187 Ariz. 363, 376, 930 P.2d 440, 453 (App.1996). Because the record does not show that the state made a written request or the court entered any order for immunity, but shows only Hernandez was told that what he said in the interview with law enforcement would not be used against him, the record does not support appellant's contention that Hernandez enjoyed immunity.

¶ 36  Appellant also argues that the authority Hernandez relied on in the trial court were cases in which a codefendant of the person on trial had invoked a Fifth Amendment privilege. He insists this is distinguishable. We see no relevant distinction between a circumstance in which a codefendant asserts a Fifth Amendment privilege against self-incrimination at a defendant's trial and any other witness who asserts a Fifth Amendment privilege; the right is not limited to codefendants but may be asserted by any witness. *See Fisher* (appellant's wife). Though not a codefendant of appellant, Hernandez risked self-incrimination on several bases.

¶ 37  Because of the court's knowledge of the risks Hernandez faced by testifying and

the proposed use of his testimony here, we cannot conclude that it abused its discretion in balancing appellant's Sixth Amendment right of compulsory process with Hernandez's assertion of his Fifth Amendment privilege against self-incrimination and, therefore, quashing appellant's subpoena to compel Hernandez's testimony.

¶38    Affirmed.

CONCURRING: WILLIAM E. DRUKE, Chief Judge, and JOHN PELANDER, Presiding Judge.