161 P.3d 1264

**STATE of Arizona, Appellee,**

v.

**Lonnie Allen BASSETT, Appellant.**

No. 1 CA–CR 06–0088.

Court of Appeals of Arizona, Division 1, Department C.

July 24, 2007.

Terry Goddard, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to decide whether the trial court committed reversible error when it failed to hold an evidentiary hearing to determine whether it was necessary to use a stun belt on Defendant Lonnie Bassett. Because we find under the facts of this case that the trial court did not err, we affirm his

---

two first degree murder convictions and resulting life sentences.

## FACTUAL BACKGROUND

¶ 2 Defendant was riding in the backseat of a car when he pulled out a shotgun and fatally shot the female driver and her front seat passenger. He jumped out after the car crashed into a light pole, walked away, returned and retrieved the shotgun. He was apprehended the following day. He was subsequently indicted for the two murders, tried, found guilty, and duly sentenced.

¶ 3 During the eight-day jury trial, there were two instances when the court was apprised that Defendant was wearing a stun belt.[1] The first was December 1, 2005, the third day of trial, when counsel complained that the belt was "way too big for [Defendant]." The judge, after learning that it was the first time the belt had been placed on Defendant, and it was the deputy sheriff's "procedure," indicated that he would talk with the deputy during the lunch recess.[2]

¶ 4 The second instance occurred at the end of the sixth trial day, December 8, 2005. Counsel stated that:

> The electronic shock belt that my client is wearing is placing him in distress. It's getting worse and worse as the afternoon goes on. Since about 2:30, he's said, "This hurts. I can't sit here any longer." I'm asking him to hold on here. He is not a whiner and complainer. It is impacting his right to participate in his defense.
>
> In this case the jury is watching him at every turn when things happen, and they are going to get the false impression that he's reacting to some evidence, when really what he is reacting to is the discomfort of the shock belt that he's wearing. And, judge, I think it's impacting my client's Sixth Amendment right to a fair trial and his ability to assist his attorney in the defense.

THE COURT: Do[es] [the State] wish to respond to that?

MS. GALLAGHER: Judge, it's the same argument I've heard from every defendant whoever had to wear a stun belt. I listened to it for three-and-a-half months from [other inmates], and I have no response. That's the jail's business.

THE COURT: I am not going to take any action with respect to that.

MR. CANBY: Judge, I'll have to raise it if it gets to the point where he can't sit in the court, which he is very close to. I have to say he was a good sport today.

THE COURT: Ms. Gallagher is correct. Your client is not the first defendant who has appeared in this court on similar charges wearing such an item, but he is the first to complain about it.

MR. CANBY: I believe it's particularly uncomfortable for him, your Honor.

THE COURT: He may be unduly sensitive. I don't know. We may have to have a doctor examine him.

MR. CANBY: We're going to have to.

¶ 5 The court's minute entry indicates that the discussion occurred between 4:42 p.m. and 5:10 p.m., and noted that the court would leave the issue of security measures to the sheriff's office. There was no further discussion of the stun belt or other restraining device during the trial.

¶ 6 We have jurisdiction over this appeal pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 and 13–4033 (2001).

## DISCUSSION

¶ 7 Defendant, citing *United States v. Durham*, 287 F.3d 1297 (11th Cir.2002), contends that the trial court committed reversible error when it failed to hold an evidentiary hearing to determine whether the stun belt was a security necessity.

---

1. Generally, a stun belt goes under clothing and can be "secured around a prisoner's waist[,]" *Gonzalez v. Pliler*, 341 F.3d 897, 899 (9th Cir. 2003), or around the leg. *See State v. Johnson*, 112 Ohio St.3d 210, 858 N.E.2d 1144, 1178, ¶ 241 (2006). It is "a method of prisoner restraint, used as an alternative to shackles." *Pliler*, 341 F.3d at 899.

2. The judge did not make a record of its conversation with the deputy sheriff, if any, or the results of any conversation.

¶ 8 Arizona courts have long held that a person being tried for a criminal offense "was entitled to appear free from all manner of shackles or bonds ... unless there was evident danger of his escape." *Parker v. Territory,* 5 Ariz. 283, 287, 52 P. 361, 363 (1898) (quoting *People v. Harrington,* 42 Cal. 165, 167 (1871)). Our supreme court has adhered to the "common law rule," *id.* at 287–88, 52 P. 361, 52 P. at 363, unless the record supported the trial judge's exercise of discretion to shackle the defendant. *See State v. Stewart,* 139 Ariz. 50, 54, 676 P.2d 1108, 1112 (1984); *State v. Starks,* 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979).

¶ 9 In fact, in *State v. Gomez,* our supreme court, following *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), recently reiterated the rule that a convicted defendant should not be visibly shackled even during the sentencing phase of trial absent justification on the record that there were "indisputably good reasons for shackling." 211 Ariz. 494, 503, ¶ 46, 123 P.3d 1131, 1140 (2005) (internal quotations omitted). In *Gomez,* the shackles were visible and there was no record of any special need for shackling other than the jail policy that required "shackling of all defendants in prison garb." *Id.* at 504, ¶¶ 47–48, 123 P.3d at 1141. The supreme court vacated the sentence and remanded the case for a new sentencing proceeding. *Id.* at 504–05, ¶ 51, 123 P.3d at 1141–42.

¶ 10 We have noted that the same rules apply for restraining devices that are hidden from the view of the jury. In *State v. Mills,* the trial court precluded the use of handcuffs or shackles during trial, but did not preclude other restraints. 196 Ariz. 269, 272, ¶ 13, 995 P.2d 705, 708 (App.1999). As a result, and without objection, the defendant was restrained by a leg brace underneath his clothes. On appeal, we found that the defendant had waived the issue by failing to object, and stated that if the defendant was restrained by a device that could not be seen, the "unseen 'restraint could not have affected the presumption of innocence.'" *Id.* at 272–73, 995 P.2d at 708–09 (citation omitted); *see also Johnson,* 858 N.E.2d at 1179, ¶ 244 (stating that the failure to object waives the

issue). More importantly, we noted that if the defendant had "made a proper objection at trial ... the state would have been required to establish 'some reason' for the restraint in the courtroom." *Mills,* 196 Ariz. at 273, ¶ 15, 995 P.2d at 709. The trial court would then be required to use its discretion to determine whether a restraint was necessary. *See State v. Bracy,* 145 Ariz. 520, 532, 703 P.2d 464, 476 (1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986).

¶ 11 Here, Defendant did not raise any legal objection at the outset to the use of any restraint underneath his clothes, including the stun belt. Only later did he advise the court on two distinct and separate occasions that he was placed in the belt and that it was causing some discomfort. The first time occurred just before lunch on the third day of trial when he complained that the stun belt was uncomfortable because it was too big. The second time occurred at the end of the sixth day of trial when Defendant complained that the belt had caused him some physical distress and was uncomfortable. He noted that the jury could have seen him moving to get comfortable and could have misunderstood his movements. There is, however, nothing in the record to support the fact that Defendant was visibly shifting in his seat that afternoon or that the jury perceived the movement, nor did Defendant move to have the jurors polled as to whether they had seen the device or his displays of discomfort.

¶ 12 Because Defendant did not object to the use of the stun belt and only raised the issue of comfort, we find that the trial court did not err by not holding an evidentiary hearing to determine whether the use of the stun belt underneath his clothes was appropriate.

¶ 13 Moreover, we find that *Durham* is inapposite. Durham was a serial bank robber with a history of escape attempts from federal custody. *Durham,* 287 F.3d at 1301. He filed a pretrial motion on the last business day before the trial began to preclude the district court from ordering that he wear a stun belt during trial. *Id.* at 1309–10 (Tjoflat, J. concurring). He argued that the use of the stun belt interfered with his rights

to confer with counsel, to participate in his own defense, and might prejudice him before the jury because the jury might think he was violent and only controlled by extraordinary means. *Id.* at 1301–02. Moreover, he requested an evidentiary hearing to determine whether the stun belt was designed to administer 50,000 volts of electricity, how it might be triggered, its error rate, the deputy's training to use the belt and whether any shock would cause long-term physical damage. *Id.*

¶ 14 The federal district court heard argument from Durham's attorney, which included the claims about the effects of the stun belt, that his client "would be 'more concerned about receiving a jolt than he is about thinking about the testimony and giving me aid and assistance in the defense of this case[,]' " and "the less compelling argument that the device interfered with Durham's comfort" because it pinched his back when he leaned forward. *Id.* at 1302. The government responded, and advised the court about the defendant's attempted escapes and the need to protect the security of those in the courtroom. *Id.*

¶ 15 The court did not hold an evidentiary hearing, but "asked several questions to the deputy marshal [who] had responsibility for courtroom security," after which it denied the motion. *Id.* The circuit court noted that the trial court ruled

> [without] any factual findings to justify its denial of Durham's motion. The court found no facts regarding the operation of the stun belt or the potential for accidental discharge. The court did not explain why less severe security methods—such as shackles alone—would have been inadequate to restrain Durham. The court also provided no guidance to Durham on what behavior would prompt the deputy to activate the stun belt.

287 F.3d at 1303.

¶ 16 Based on those facts, the circuit court articulated its concerns about the use of a stun belt. First, after recognizing that stun belts are worn underneath clothing and are not readily visible to the jury, the court noted that "if the stun belt protrudes from the defendant's back to a noticeable degree,

it is at least possible that it may be viewed by a jury [and][i]f seen, the belt 'may be even more prejudicial than handcuffs or leg irons because it implies that unique force is necessary to control the defendant.' " *Id.* at 1304. The court continued and stated that

> We are more concerned about the possibility that a stun belt could disrupt a different set of a defendant's constitutionally guaranteed rights.... The fear of receiving a painful and humiliating shock for any gesture that could be perceived as threatening likely chills a defendant's inclination to make any movement during trial—including those movements necessary for effective communication with counsel.

*Id.*

¶ 17 The circuit court then noted that "[a]nother problem with this device is the adverse impact it can have on a defendant's Sixth Amendment and due process rights to be present at trial and to participate in his defense." *Id.* at 1305–06. The court was concerned that a stun belt might create anxiety by forcing the defendant to worry more about the belt and preventing it from being activated than to fully participate in his defense at trial. Or, as the court stated in a footnote, "[m]andatory use of a stun belt implicates [the right to be present at trial], because despite the defendant's physical presence in the courtroom, fear of discharge may eviscerate the defendant's ability to take an active role in his own defense." 287 F.3d at 1306 n. 7.

¶ 18 The final concern noted was that "stun belts have the potential to be highly detrimental to the dignified administration of criminal justice." *Id.* at 1306. The court noted that "[s]hackles are a minor threat to the dignity of the courtroom when compared with the discharge of a stun belt, which could cause the defendant to lose control of his limbs, collapse to the floor, and defecate on himself." *Id.* It then held that

> [A] decision to use a stun belt must be subjected to at least the same "close judicial scrutiny" required for the imposition of other physical restraints. Due to the novelty of this technology, a court contemplating its use will likely need to make factual

findings about the operation of the stun belt, addressing issues such as the criteria for triggering the belt and the possibility of accidental discharge. A court will also need to assess whether an essential state interest is served by compelling a particular defendant to wear such a device, and must consider less restrictive methods of restraint. Furthermore, the court's rationale must be placed on the record to enable us to determine if the use of the stun belt was an abuse of the court's discretion.

*Id.* at 1306–07 (quotation marks, citations and footnotes omitted).

¶ 19 The circuit court, after finding that the government's attempts to demonstrate harmless error were insufficient, held that "the defendant's ability to participate meaningfully throughout his trial was hampered by the use of the stun belt. The government has not demonstrated that Durham's defense was not harmed by such an impediment to Durham's ability to participate in the proceedings." *Id.* at 1309. The court then vacated his bank robbery and related convictions and remanded the case for further proceedings. *Id.*[3]

¶ 20 Here, as noted above, Defendant never filed a pretrial motion objecting to the restraint or otherwise objected to the use of any restraint. Second, there is no indication in the record that Defendant wore the stun belt other than the two times referred to in the record. Third, other than the issue of comfort, only at the end of the sixth day of trial did Defendant speculate that the belt might impair his constitutional rights when counsel stated that "I'll have to raise [the Sixth Amendment claim] if it gets to the point where he can't sit in the court...." Defendant, however, never raised the issue again. Consequently, based on the facts in this case, Durham is inapposite.

## CONCLUSION

¶ 21 Based on the foregoing, we conclude that the trial court did not err by not holding a *Durham*-type evidentiary hearing. Ac-

cordingly, we affirm the Defendant's convictions and sentences.

CONCURRING: PATRICK IRVINE, Judge.

KESSLER, Judge, dissenting.

¶ 22 I respectfully dissent. Defendant adequately raised his objection to the use of the stun belt. Defendant stated the belt was "impacting his right to participate in his defense," that "the jury is watching him at every turn when things happen," and therefore "it's impacting my client's Sixth Amendment right to a fair trial and his ability to assist his attorney in the defense." These statements clearly communicated two distinct constitutional challenges to the use of the stun belt: that the jury may have been unduly aware of the restraint during the trial, and that it restricted Defendant's ability to participate in his own defense. They put the court on notice of potential constitutional error such that the court had the opportunity to provide a remedy if necessary, and therefore it was a sufficient objection. *See State v. Fulminante*, 193 Ariz. 485, 503, ¶ 64, 975 P.2d 75, 93 (1999).

¶ 23 Despite this, the superior court made no ruling or findings of fact on these issues, and this Court is therefore deprived of any record with which it may meaningfully assess whether there was in fact constitutional error as alleged. Additionally, the State has made no showing whatsoever that the use of the belt did not prejudice Defendant. Defendant's conviction and sentence should not be affirmed based on this record. *See State v. Lee*, 189 Ariz. 608, 617, 944 P.2d 1222, 1231 (1997) (when defendant objects to use of restraint during trial, record should support trial court's decision); *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (error is deemed harmless on appeal when state shows beyond a reasonable doubt that error did not impact verdict). I would therefore reverse Defendant's conviction and remand for a new trial.

---

**3.** On remand, the court had a hearing, made its factual findings and determined that the use of a stun belt had been warranted. *See United States v. Durham*, 219 F.Supp.2d 1234 (N.D.Fla.2002).