42 P.3d 1177

STATE of Arizona, Appellee,

v.

Arnulfo ROSAS–HERNANDEZ,
Appellant.

No. 1 CA–CR 01–0153.

Court of Appeals of Arizona,
Division 1, Department E.

March 28, 2002.

Janet Napolitano, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Donna J. Lam, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Christopher V. Johns, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶1 This case raises an issue of first impression in Arizona: Does an individual who pleads guilty and has been sentenced retain the Fifth Amendment right to refuse to testify during the time period in which the individual may file an initial petition for post-

conviction relief? Arnulfo Rosas–Hernandez ("defendant") contends the trial court erred in allowing his alleged co-participant to invoke his Fifth Amendment right and refuse to testify at trial. Defendant also claims error based on the prosecutor's statements in closing argument and the trial court's refusal to include the phrase "mere association" in the jury instructions. Finding no error, we affirm.

### FACTS

¶ 2 Defendant, along with his brother-in-law Ignacio Betancourt and a third man named Suaezo, entered the home of Jose A. on August 6, 1999. They claimed to be law enforcement officials. Jose was sleeping in the bedroom when the men arrived. Suaezo pulled out a gun. He and Betancourt herded Maria A. (Jose's wife), their five children, and another female resident into a bedroom closet. Defendant stayed in the living room, guarding the front door.

¶ 3 Suaezo and Betancourt then went to the bedroom where Jose was sleeping. Maria escaped from the closet and ran to her husband's bedroom. She found Jose face down with his hands tied behind his back. Maria told her husband to give the men money, if that's what they wanted. Jose responded that he had no money. Jose struggled with his assailants and freed himself. He grabbed a gun and fired several rounds. Betancourt was shot four times in the stomach. Suaezo and Betancourt then subdued Jose and shot him in the head, killing him.

¶ 4 Outside, defendant was seen pacing the house seconds before the shots were fired. After the shots were fired, defendant got into the driver's seat of the car. Betancourt and Suaezo exited the house, got into the car, and defendant drove off. A neighbor provided the license plate number to police. The vehicle was owned by defendant. The police located the vehicle and apprehended defendant and Betancourt. Suaezo was never found.

¶ 5 At trial, defendant's defense was that he was at the scene but did not participate in the offense and remained outside the residence. However, four witnesses testified that three men entered the house and two of the witnesses identified defendant as being among them.

¶ 6 A jury convicted defendant of first degree felony murder, burglary, attempted armed robbery and seven counts each of kidnapping and aggravated assault, all dangerous offenses. The court sentenced him to concurrent terms of life without release for twenty-five years on the murder count, seven years each for the burglary and two of the kidnapping counts, and five years each for two of the aggravated assault convictions. The court also sentenced defendant to ten calendar years for each of the remaining kidnapping and aggravated assault charges, which were dangerous crimes against children. Those terms were consecutive to each other as well as to the other counts.

¶ 7 Defendant timely appealed. We have jurisdiction pursuant to A.R.S. sections 12–120.21(A)(1)(1992), 13–4031 (2001), and 13–4033(A)(2001).

### DISCUSSION

#### I.

### Betancourt's Invocation of the Privilege Against Self–Incrimination

#### A.

¶ 8 Prior to defendant's trial, Betancourt pled guilty to second degree murder and was sentenced to twenty-two years in prison. Defendant sought to call him as a witness.[1] Betancourt, however, refused to testify, invoking his Fifth Amendment right against self-incrimination. At a hearing on the matter, Betancourt's counsel asserted that Betancourt intended to file a petition for post-conviction relief, and that if he were successful in that petition, his testimony at defendant's trial could be used against him at a future trial. Betancourt personally told the court that he would not testify. Over defense counsel's objection, the court held that

---

1. During interviews with police, Betancourt said that defendant knew nothing about what hap-

pened and that defendant had never entered Jose's house.

Betancourt could properly assert his Fifth Amendment right.

¶ 9 Defendant argues that Betancourt waived his Fifth Amendment right since he had pled guilty and been sentenced. Defendant asserts that the court's refusal to order Betancourt to testify denied him a fair trial.

¶ 10 We review a trial court's decision to excuse a witness asserting the privilege against self-incrimination for abuse of discretion. *State v. Mills*, 196 Ariz. 269, 276, ¶ 31, 995 P.2d 705, 712 (App.1999). We are faced with competing constitutional interests. A defendant has a Sixth Amendment right to compel witnesses to testify whose testimony is material and favorable to the defense. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *State v. McDaniel*, 136 Ariz. 188, 194, 665 P.2d 70, 76 (1983) (citing *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). When a witness asserts a Fifth Amendment right against self-incrimination, the trial court must balance the interests of the defendant with those of the witness. *Mills*, 196 Ariz. at 276, ¶ 31, 995 P.2d at 712. However, "[i]f the witness validly asserts his Fifth Amendment privilege by showing 'a reasonable ground to apprehend danger to the witness from his being compelled to answer,' the defendant's right to compulsory process must yield to the witness's privilege not to incriminate himself." *Id.* ((citing *United States v. Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir.1976)); *see State v. Cornejo*, 139 Ariz. 204, 208, 677 P.2d 1312, 1316 (App.1983); *State v. Fisher*, 141 Ariz. 227, 243, 686 P.2d 750, 766 (1984)). There is no Sixth Amendment right to compel a witness to testify if the facts support that the witness has properly claimed the Fifth Amendment privilege. *United States v. Turkish*, 623 F.2d 769, 773–74 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Thus, the determinative issue is whether Betancourt had a valid Fifth Amendment right to assert.

¶ 11 To validly invoke Fifth Amendment rights, a witness must demonstrate a reasonable ground to apprehend danger from being compelled to testify. *Mills*, 196 Ariz. at 276, ¶ 31, 995 P.2d at 712. A defendant

convicted of an offense retains the right against self-incrimination through any direct appeal, until the judgment of conviction is final. *See State v. Corrales*, 138 Ariz. 583, 587 n. 1, 676 P.2d 615, 619 n. 1 (1983); *State v. McElyea*, 130 Ariz. 185, 187, 635 P.2d 170, 172 (1981); *State v. Gretzler*, 126 Ariz. 60, 88, 612 P.2d 1023, 1051 (1980).

¶ 12 In *State v. Axley*, 132 Ariz. 383, 385 n. 1, 388, 646 P.2d 268, 270 n. 1, 273 (1982), the defendant asserted that the prosecutor's unwillingness to grant immunity to the co-defendant (who had pled guilty) resulted in the inability to secure the testimony of this essential defense witness. *Id.* at 387, 646 P.2d 268, 272. In that case, the court found that because the co-defendant's conviction could have been, and was eventually, appealed, the co-defendant still possessed the right to invoke the Fifth Amendment if called as a witness during defendant's trial. *Id.* at 388, 646 P.2d at 273. In *Mitchell v. United States*, 526 U.S. 314, 325, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), the Court stated, "[w]e reject the position that either petitioner's guilty plea or her statements at the plea colloquy functioned as a waiver of her right to remain silent at sentencing." The Court also stated, "[a]lthough the witness has pleaded guilty to a crime charged but has not been sentenced, his constitutional privilege remains unimpaired." *Id.* at 326, 119 S.Ct. 1307 (citing J. Wigmore, Evidence § 2279, p. 991, n. 1 (A. Best ed. Supp.1998)); *see Axley*, 132 Ariz. at 385 n. 1, 388, 646 P.2d at 270 n. 1, 273. And, as noted above, even after sentencing the Fifth Amendment privilege remains throughout any appeal. *State v. Politte*, 136 Ariz. 117, 122, 664 P.2d 661, 666 (App.1982).

¶ 13 A Rule 32 petition for post-conviction relief is "analogous to a direct appeal for a pleading defendant." *Montgomery v. Sheldon*, 181 Ariz. 256, 260 n. 5, 889 P.2d 614, 618 n. 5 (1995), *supplemented by* 182 Ariz. 118, 893 P.2d 1281 (1995). Although procedurally different, a post-conviction relief proceeding is similar to a direct appeal in that both ensure that a defendant is afforded due process of law and both ultimately seek the same relief—a new trial. *Id;*

*See State v. Smith,* 184 Ariz. 456, 458, 910 P.2d 1, 3 (1996)(holding that because a Rule 32 petition is analogous to a direct appeal, an indigent defendant is entitled to appointed counsel for an initial post-conviction relief proceeding).

¶ 14 It follows that if a witness' Fifth Amendment privilege survives during a direct appeal, it also survives pending post-conviction relief. *See Mitchell,* 526 U.S. at 324, 119 S.Ct. 1307 (stating, "[a] waiver of a right to trial with its attendant privileges is not a waiver of the privileges which exist beyond the confines of trial."); *Politte,* 136 Ariz. at 122, 664 P.2d at 666 ("[T]he privilege granted by the Fifth Amendment applies throughout *any appeal*.")(emphasis added); *Axley,* 132 Ariz. at 388, 646 P.2d at 273 (a witness who entered a guilty plea and had the right to appeal his conviction "still possessed the right to invoke the fifth amendment"). Thus, defendant's contention that Betancourt had no Fifth Amendment privilege to assert, because he had pled guilty and had been sentenced, is not well-grounded.

¶ 15 At the time defendant sought to call him to testify, Betancourt still had time to seek a new trial by filing his initial petition for post-conviction relief pursuant to Arizona Rule of Criminal Procedure 32.4.[2] He told the court that he intended to file such a petition. As Betancourt argued, if his petition were successful, any testimony compelled in defendant's case could be used against Betancourt at a subsequent trial.

¶ 16 Thus, we determine that Betancourt retained the right not to incriminate himself during the time period in which a timely initial petition for post-conviction relief may

be filed. We need not, and do not, address whether the prospect of subsequent petitions for post-conviction relief provides for Fifth Amendment protection in the face of competing Sixth Amendment concerns. That is an issue for another day.[3]

**B.**

¶ 17 Defendant also argues that the court did not conduct a sufficient inquiry to determine if a proper basis existed for Betancourt to invoke the privilege. The court may excuse a witness only when the trial court has " 'extensive knowledge of the case' and finds that the witness can legitimately invoke the Fifth Amendment to all relevant questions asked of him." *State v. Maldonado,* 181 Ariz. 208, 210, 889 P.2d 1, 3 (App.1994)(quoting *State v. McDaniel,* 136 Ariz. 188, 194, 665 P.2d 70, 76 (1983)). The witness must provide the court with a factual predicate from which the court can evaluate the claim of privilege. *Thoresen v. Superior Court (Miller),* 11 Ariz.App. 62, 66, 461 P.2d 706, 710 (1969). The court need not, however, personally question the witness if it can gain the necessary information by other means. *Mills,* 196 Ariz. at 276, ¶ 31, 995 P.2d at 712.

¶ 18 Betancourt provided no information to the court about the case or his proposed testimony other than that he refused to testify and that he intended to file a motion for post-conviction relief. The court, however, had extensive knowledge about the case,[4] including Betancourt's alleged involvement, because it had already heard the state's en-

---

**2.** Arizona Rule of Criminal Procedure 32.1 states: "[A]ny person who pled guilty or no contest ... shall have the right to file a post-conviction relief proceeding[.]" Rule 32.3 states: "This proceeding is part of the original criminal action and not a separate action." Rule 32.4(a) states: "[T]he notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the final order or mandate by the appellate court in the petitioner's first petition for post-conviction relief proceeding."

**3.** We likewise do not address whether the ability to file an untimely initial petition provides Fifth Amendment protection. Rule 32.4(a) provides

"[a]ny notice not timely filed may only raise claims pursuant to Rule 32.1(d), (e), (f), (g) or (h)."

**4.** The requirement of "extensive knowledge" is not necessarily synonymous with an extensive amount of detailed information. In order to tell time, one need not know how a watch is made. It is apparent that any testimony by Betancourt about defendant's lack of involvement at the scene would, at minimum, be an admission that Betancourt was, himself, present. This admission alone could be a "reasonable ground to apprehend danger," *Mills,* 196 Ariz. at 276, ¶ 31, 995 P.2d at 712, in this particular case.

tire case and a portion of defendant's.[5] From this knowledge, the court could reasonably conclude that any relevant question could implicate Betancourt, giving rise to the valid exercise of his privilege.

¶ 19 Defendant argues that he could have asked Betancourt questions about defendant's own lack of involvement in the shooting without asking questions about Betancourt's involvement. Defendant, however, does not indicate what relevant questions he could have asked Betancourt that would not have incriminated Betancourt or that would not have permitted incriminating questions on cross-examination. *See Mills*, 196 Ariz. at 277, ¶ 34, 995 P.2d at 713 (recognizing that the trial court understood the jeopardy that a witness faced from cross-examination). Nor did defendant present such questions for the trial court's consideration.

¶ 20 Accordingly, we conclude that the trial court had the extensive knowledge necessary to decide the issue and did not abuse its discretion in permitting Betancourt to invoke his Fifth Amendment rights.

## II.

### *Prosecutorial Misconduct*

¶ 21 In his opening statement, defense counsel presented a detailed version of the events at issue. He told the jury that defendant did not participate in or facilitate the offenses. He told the jury that defendant drove Betancourt and Suaezo to the victim's home as a favor, so Suaezo could collect a debt. Defense counsel explained that Suaezo directed defendant where to drive and where to stop, and then told defendant to wait in the car while Suaezo and Betancourt went into the house. Defendant, according to defense counsel's opening statement, waited in the car and listened to music. When Suaezo and Betancourt came out, defendant (again according to defense counsel) could see Betancourt was hurt and wanted to go to the hospital but Suaezo insisted on being taken home, threatening defendant's family. Finally, defense counsel indicated that defendant then drove back to his home and called the

police. Defendant, however, did not testify at trial. The evidence at trial did not support the scenario presented by defense counsel.

¶ 22 In the state's initial closing argument, the prosecutor argued:

You have to keep in mind that everything that you—or your decision has to be based on what came from the witness stand. It can't be based on what came from that chair—I'm pointing to [defense counsel's] chair.

You remember during his opening statement, he wove quite a tale to you about what happened on the way down to south Phoenix or perhaps what you thought the evidence would be. That's not what the evidence was. None of that is before you. You are not to consider it. *It is as if it were a lie.* That's exactly what it is.

(Emphasis added.) After the comment regarding "a lie," the defense objected. The court sustained the objection and instructed the jury to disregard the prosecutor's statement. Defense counsel later moved for a mistrial, arguing that the prosecutor's comments attacked his credibility, denying defendant a fair trial. The prosecutor denied attacking defense counsel. The trial court found the comment inappropriate and uncalled for, but denied the mistrial, concluding that the statement did not reflect on defense counsel's credibility. Defendant now argues that the prosecutor's comment denied him a fair trial. We disagree.

¶ 23 A trial court's denial of a motion for mistrial for prosecutorial misconduct will not be disturbed absent a clear abuse of discretion. *State v. Lee*, 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997). We review acts of prosecutorial misconduct to determine whether they affected the proceedings in such a way as to deny the defendant a fair trial. *State v. Hughes*, 193 Ariz. 72, 73, 969 P.2d 1184, 1190 (1998). The test is whether the misconduct affected the jury's ability to fairly assess the evidence. *State v. Murray*, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995). To require reversal, the misconduct

5. Although defendant asserts that the court did not gain the extensive knowledge required, he does not specify what necessary information the court was lacking.

must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Lee*, 189 Ariz. at 616, 944 P.2d at 1230.

¶ 24 Counsel are afforded wide latitude in closing argument and are permitted to argue reasonable inferences from the evidence presented. *State v. Dumaine*, 162 Ariz. 392, 401, 783 P.2d 1184, 1193 (1989). When defense counsel takes the calculated risk of setting forth a detailed accounting of defendant's testimony—knowing full well that there is no other factual support for defendant's anticipated testimony and that the defendant may choose not to testify—the opening statement is clearly subject to attack just as the prosecutor (with one exception) did here. The one exception here was the statement: "It is as if it were a lie." This added nothing to the legitimate argument, but served merely to personalize it. We do not determine that there are no circumstances in which one lawyer may characterize another lawyer's argument as "a lie," but the trial judge was well within her discretion in finding the argument improper here.

¶ 25 We agree with the state, however, that the prosecutor's one comment does not warrant reversal. *See State v. Gonzales*, 105 Ariz. 434, 436–37, 466 P.2d 388, 390–91 (1970) (no abuse of discretion in denying motion for mistrial based on prosecutor's accusing defense counsel of talking with a "forked tongue"). It did not permeate the entire atmosphere of the trial. The court immediately sustained an objection and directed the jurors to disregard the comment. Jurors are presumed to follow the court's instructions. *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996). The trial court is in the best position to determine if a prosecutor's remarks require a mistrial. *State v. Hansen*, 156 Ariz. 291, 297, 751 P.2d 951, 957 (1988). The record amply supports the trial court's determination that the comment did not prevent the jury from fairly considering the evidence. We find no abuse of discretion on this score.

¶ 26 Defendant also contends that the prosecutor's comment constituted vouching. We disagree. Vouching occurs when a prosecutor places the prestige of the government behind a witness or when the prosecutor suggests that information not presented to the jury supports a witness's testimony. *Dumaine*, 162 Ariz. at 401, 783 P.2d at 1193. The prosecutor's comment fits neither of these circumstances. Defendant argues that the comment implied knowledge outside the evidence. However, the prosecutor's comment was clearly based on the significant discrepancy between defense counsel's opening statement and the evidence at trial. There was no suggestion by the prosecutor of outside knowledge. Further, the prosecutor's comment was not directed at the testimony of a witness, but the non-evidentiary statements of opposing counsel.

¶ 27 We find no abuse of discretion in the trial court's denial of defendant's motion for mistrial based on the prosecutor's comment in closing argument.

### III.

### *Mere Presence Instruction*

¶ 28 Defense counsel requested that the court give the following "mere presence" instruction, taken from *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App.1996):

Guilt cannot be established by the defendant's mere presence at a crime scene *or mere association* with another person at a crime scene. The fact that the defendant may have been present does not in and of itself make the defendant guilty of the crimes charged.

(Emphasis added.) The state argued that the "mere association" portion of the proposed instruction was applicable to gang association, which was not present in this case. The court agreed, holding that a mere presence instruction combined with the accomplice liability instruction adequately instructed the jury on the law.

¶ 29 The court gave the following instructions on mere presence and accomplice liability:

The mere presence of a defendant at the scene of a crime, together with knowledge a crime is being committed, is insufficient to establish guilt.

A person is criminally accountable for the conduct of another if the person is an accomplice of such other person in the commission of the offense.

An accomplice is a person who, with intent to promote or facilitate the commission of an offense, aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense.

¶ 30 Defendant argues that the trial court erred in omitting the "mere association" portion of his requested instruction. Defendant contends that this language was necessary because defendant did not deny bringing the assailants to the victims' house but claimed he did not know what would happen.

¶ 31 "A party is entitled to an instruction on any theory reasonably supported by the evidence." *State v. Shumway*, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983). The trial court is not required to give a jury instruction, however, if the substance of that instruction is adequately covered by other instructions. *State v. Mott*, 187 Ariz. 536, 546, 931 P.2d 1046, 1056 (1997). The test is whether the instructions, viewed in their entirety, adequately set forth the law applicable to the case. *State v. Rodriguez*, 192 Ariz. 58, 61–62, ¶ 16, 961 P.2d 1006, 1009–10 (1998). Further, the instructions must not mislead the jury. *Noriega*, 187 Ariz. at 284, 928 P.2d at 708. The failure to give an instruction is not reversible error unless it is prejudicial to the defendant and the prejudice appears in the record. *State v. Barr*, 183 Ariz. 434, 442, 904 P.2d 1258, 1266 (App.1995). We review a trial court's denial of a requested jury instruction for abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶ 32 The instruction requested by defendant was a correct statement of the law. *See Noriega*, 187 Ariz. at 284, 928 P.2d at 708. We agree with defendant that nothing in *Noriega* restricts use of the "mere association" language to situations involving gangs. Nevertheless, we do not conclude that the trial court erred by not including that phrase in the instruction it gave.

¶ 33 The issue in *Noriega* was whether a mere presence instruction was required at all, not whether the particular instruction proposed in that case was the only appropriate manner of instructing on this issue. The concern in *Noriega* was that, in the absence of a "mere presence" instruction, jurors might ascribe guilt based on non-culpable conduct or infer the intent necessary to establish accomplice liability from an individual's mere presence at the scene. *Noriega*, 187 Ariz. at 285–86, 928 P.2d at 709–10. Those concerns were addressed here by the instructions given by the court.

¶ 34 Defendant conceded his presence at the scene, although asserting he remained outside the house. Jurors were instructed that his presence at the scene, even if he knew a crime was being committed, was insufficient to establish guilt. Jurors were also instructed that defendant was not guilty as an accomplice unless they specifically found that he intended to facilitate the crimes. These two factors address the concerns raised in *Noriega*.

¶ 35 As is often the case, there is frequently more than one way to properly instruct a jury. Every correct statement of law from appellate decisions need not be included in an instruction so long as the instruction accurately communicates the law. That is the case here. We find that the jury was adequately instructed under the facts of the case and that the trial court did not abuse its discretion in denying defendant's requested instruction.

### CONCLUSION

¶ 36 For the foregoing reasons, defendant's convictions and sentences are affirmed.

CONCURRING: JON W. THOMPSON, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.