NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEPH NORRIS CLIFTON, *Appellant.*

No. 1 CA-CR 13-0514
FILED 08-28-2014

Appeal from the Superior Court in Maricopa County
No.  CR2012-154538-001
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

C A T T A N I, Judge:

¶1        Joseph Norris Clifton appeals his convictions and sentences for two counts of organized retail theft and two counts of trafficking in stolen property.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        In mid-October 2012, the Scottsdale Police Department surveilled Clifton and William "Billy" Connolly.  The officers observed Clifton and Connolly drive to two different grocery stores at which Clifton dropped Connolly off, parked nearby, and communicated with him telephonically as he went into the stores.  While Clifton waited outside, Connolly took cosmetics, hid them under a bag of cereal in a shopping basket, and walked out without paying.  Clifton then picked Connolly up and sped away.

¶3        Shortly after leaving the second grocery store, Clifton drove to his apartment, parked his car, and went inside.  He eventually left his apartment and drove to a local gym, where he placed some of the stolen cosmetics in a dumpster behind the gym.  Meanwhile, Connolly got out of Clifton's vehicle carrying a large, heavy backpack and walked to a red vehicle parked at a nearby apartment complex.  Connolly got into the red vehicle, and its driver drove it to a secluded area, parked for about five minutes, and then returned to Clifton's apartment complex.  Connolly got out of the vehicle carrying a now-empty backpack.  Connolly subsequently made a call on his cell phone, Clifton reappeared, and the two drove off again in Clifton's car.

¶4        Shortly thereafter, officers arrested Clifton and Connolly.  Following the arrest, police officers found two bags of cereal and Connolly's

---

[1]        We view the facts in the light most favorable to upholding the jury's verdicts.  *State v. Kindred*, 232 Ariz. 611, 613, ¶ 2, 307 P.3d 1038, 1040 (App. 2013).

empty backpack inside Clifton's car, along with two empty grocery-store baskets in the trunk. Police also found two more empty grocery baskets in a set of dumpsters behind the gym where they had previously seen Clifton. The police searched the red vehicle and found a bag full of cosmetics consistent with those Connolly had taken from the grocery stores.

¶5 In late October 2012, a grand jury indicted Clifton and Connolly on two counts of organized retail theft, class 4 felonies, and two counts of trafficking in stolen property in the second degree, class 3 felonies. Before Clifton's trial, Connolly entered into a plea agreement with the State.

¶6 At trial, the State called six police officers and the manager of one of the grocery stores to testify. The State also played a recording in which Clifton confessed to knowing that Connolly had been shoplifting. Clifton also admitted he received $60 for driving Connolly and that he knew Connolly was targeting cosmetics. Although the State called Connolly as a witness, he refused to testify against Clifton despite a grant of immunity from the State and an order of contempt by the court.

¶7 The jury found Clifton guilty on all counts. At a post-trial hearing, the State presented certified documents that contained Clifton's name, date of birth, fingerprints, and photograph, and that described four of Clifton's prior convictions. A latent fingerprint examiner testified at the hearing that the fingerprints on the documents matched Clifton's fingerprints, and the trial judge found that Clifton had previously been convicted of two counts of shoplifting and two counts of possession of narcotic drugs, all class 4 felonies.

¶8 The court sentenced Clifton to concurrent, mitigated terms of 6 years each for the two counts of organized retail theft, and 7.5 years each for the two counts of trafficking in stolen property, with 250 days' presentence incarceration credit.

¶9 Clifton timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033.[2]

## DISCUSSION

¶10 Clifton presents two issues on appeal: (1) whether the prosecutor committed misconduct during closing argument and (2)

---

[2] Absent material revisions after the relevant date, we cite a statute's current version.

whether this court is bound by the United States Supreme Court's decisions in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that when a prior conviction is used to enhance a criminal sentence, the prior conviction need not be proven to a jury.

## I. Prosecutorial Misconduct During Closing Argument.

¶11 To prevail on a claim of prosecutorial misconduct, a defendant must show that misconduct occurred and that there is a reasonable likelihood the misconduct could have affected the jury's verdict and denied the defendant a fair trial. *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007). In determining whether a prosecutor's remarks were improper, we consider factors including "(1) whether the remarks call[ed] to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000) (citation omitted). "The misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Morris*, 215 Ariz. at 335, ¶ 46, 160 P.3d at 214 (citation omitted). Because prosecutors have wide latitude in presenting closing arguments, and the trial court is in the best position to determine if a prosecutor's statements require a mistrial, we review for a clear abuse of discretion. *Jones*, 197 Ariz. at 305 ¶ 37, 4 P.3d at 360; *State v. Lee*, 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997).

### A. Burden Shifting.

¶12 Clifton argues that during the State's closing rebuttal, the prosecutor improperly tried to shift the burden of proof by stating that Clifton did not "offer evidence" and that "the State isn't the only side who has the power to subpoena witnesses." Following both remarks, defense counsel objected, asserting that the prosecutor was shifting the burden of proof. The superior court sustained both objections and gave curative instructions. Clifton requested a mistrial both times, but the court denied the requests.

¶13 Preliminarily, it is not improper for a prosecutor to comment regarding a defendant's failure to present evidence to support his or her theory of the case, as long as the comment does not direct the jury's attention to the defendant's failure to testify. *State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24, 199 P.3d 686, 692 (App. 2008). Thus, the prosecutor's comment in this case was arguably proper. Nevertheless, we need not address the

propriety of the comment because the court sustained Clifton's objection and instructed the jurors to disregard the prosecutor's comments and to look to the jury instructions for guidance, which included the following directive:

> The State must prove guilt beyond a reasonable doubt based on the evidence. The defendant is not required to produce evidence of any kind. The decision on whether to produce any evidence is left to the defendant acting with the advice of an attorney. The defendant's decision not to produce any evidence is not evidence of guilt.

Because we presume that the jurors followed the court's instructions, *State v. Newell*, 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006), and because the evidence supports the jury's verdict, *see supra* ¶¶ 2–4, Clifton has not demonstrated that the alleged misconduct deprived him of a fair trial or otherwise warranted a mistrial. *See Morris*, 215 Ariz. at 335, ¶ 46, 160 P.3d at 214.

### B.     Vouching.

**¶14**          Clifton asserts that the prosecutor improperly suggested that he could have called witnesses to corroborate the testimony of other State witnesses. For this argument, Clifton relies on the following discussion by the prosecutor:

> And we heard talk about why fingerprints weren't – one, why cell phone records weren't offered. I suppose, if we're playing it sound, I could have called additional witnesses. Maybe I would have called a forensic examiner. Maybe a forensic examiner could have come up here and testified about all their training and all their experiences that allow them to download data off a cell phone. Then we could have had the forensic examiner discuss the cell phones in this case. Maybe we could have had the forensic examiner then correlate the cell phone data to certain numbers, then perhaps we could have subpoenaed the various cell phone companies. There [are] probably two. Probably don't have the same carrier. That's just odds. So we would have called two more witnesses to come and testify as to accounts and particular numbers and who is associated with particular accounts. And we could have gone all through that to know what we already know, that they were talking to each other.

¶15 Because Clifton did not object to the prosecutor's statements during the trial, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20, 115 P.3d 601, 607 (2005).

¶16 Impermissible prosecutorial vouching occurs when "the prosecutor places the prestige of the government behind its witness[es]" or "the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Vincent*, 159 Ariz. 418, 423, 768 P.2d 150, 155 (1989). Here, we find no such vouching. The prosecutor's statement simply explained his belief that it would be a "waste of resources" to present evidence to establish something that was already clear. The prosecutor did not argue that the State had undisclosed evidence not presented to the jury and was speaking hypothetically by using the terms "probably" and "maybe." Clifton's counsel's failure to object to the prosecutor's remarks suggests that he, too, understood that the comments were simply part of a hypothetical discussion and were not unfairly prejudicial. *See James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) (noting that "[t]he absence of a timely objection is particularly significant to a claim of prosecutor misconduct in closing argument" because both defense counsel and the court heard the remarks and were in a better position to determine its significance to the trial).

¶17 Furthermore, the prosecutor's remarks appropriately rebutted Clifton's closing argument, in which Clifton asserted that the State's evidence was insufficient because the State did not produce fingerprints or phone records. *See State v. Rosas-Hernandez*, 202 Ariz. 212, 219, ¶ 26, 42 P.3d 1177, 1184 (App. 2002) (finding that a prosecutor did not engage in vouching because his comments were directed at the non-evidentiary statement of opposing counsel, not a witness's testimony, and the prosecutor did not suggest that he had outside knowledge). Therefore, we conclude the prosecutor's remarks did not constitute vouching.

### C. Improper and Misleading Statements Regarding Connolly.

¶18 Clifton also contends that the prosecutor improperly stated that Connolly could have testified. Clifton argues that the statement was improper and misleading because the State knew Connolly had pled guilty to related charges and that Connolly had invoked his right to silence and was otherwise unavailable to testify at trial. Clifton argues that this comment left the jury with the erroneous impression that Clifton had an obligation to call witnesses on his behalf, but did not do so. Clifton asserts that the State thus improperly called to the jury's attention "matters that they would not be justified in considering in determining their verdict," *see*

*Jones*, 197 Ariz. at 305, ¶ 37, 4 P.3d at 360 (citation omitted), and misleadingly suggested that Connolly had not been apprehended and did not have any culpability in the case.

**¶19** Clifton points in particular to the following remarks by the prosecutor in his rebuttal closing argument:

> And we had, you know, a lot of inferences as to, well, where's Billy? Why didn't Billy come up? Where is Edward [sic] Lopez? Billy and Eduardo Lopez aren't on trial, ladies and gentlemen. If they are arrested and if they're charged, they'll be in different trials on different days with different juries.
>
> The defense is playing a, look over here, don't look here. Don't look at my client's guilt which the State has proven beyond a reasonable doubt, look at these guys. They're the bad guys. It's a bait and switch. They're all guilty, all three. Based on the evidence that's presented in this case, they're all guilty. Don't confuse the fact that this isn't their trial with the fact that . . .

Clifton's counsel interjected, asserting that the prosecutor was vouching for the police officers. The court sustained the objection, and asked the jury to disregard the prosecutor's statements. The defense did not move for a mistrial.

**¶20** The prosecutor's statement did not specifically vouch for any particular testimony or suggest there was other evidence supporting the State's case. In fact, the prosecutor specifically directed the jury to consider "the evidence that's presented in this case." Moreover, the prosecutor was merely responding to defense counsel's assertion that the police did not conduct any further investigation into Connolly's and Lopez's involvement in the case. Furthermore, the trial court sustained the objection, and we assume that the jurors followed the court's curative instruction. *See Newell*, 212 Ariz. at 403, ¶ 68, 132 P.3d at 847. Clifton has not demonstrated that the prosecutor's statements deprived him of a fair trial or otherwise warranted a mistrial. *See Morris*, 215 Ariz. at 335, ¶ 46, 160 P.3d at 214.

## II. Prior Conviction Jurisprudence.

**¶21** Clifton asks this court to remand the case for a jury determination of his prior felony convictions used for sentencing enhancement. Because Clifton did not raise this issue during trial, we

review only for fundamental, prejudicial error. *See Henderson*, 210 Ariz. at 567, ¶¶ 19–20, 115 P.3d at 607. We find none.

**¶22**      The United States Supreme Court and the Arizona Supreme Court have squarely decided this issue. *See Almendarez-Torres*, 523 U.S. at 226–27 (holding that a prior conviction, when used as a sentencing enhancement, need not be charged as an additional element of an offense); *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) ("[A]ny fact (*other than prior conviction*) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.") (emphasis added); *Apprendi*, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); *State v. Ring (Ring III)*, 204 Ariz. 534, 555–56, ¶ 55, 65 P.3d 915, 936–37 (2003) (holding that *Almendarez-Torres* controls and that the Sixth Amendment does not require a jury to determine prior convictions as aggravating factors).

**¶23**      Clifton argues that *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *State v. Gross*, 201 Ariz. 41, 31 P.3d 815 (App. 2001), support his position that the *Almendarez-Torres* and *Ring* holdings are no longer viable. But in *Alleyne*, although the United States Supreme Court held that facts that increase the statutory minimum (as well as maximum) sentence must be submitted to a jury, *see* 133 S. Ct. at 2155, the court specifically acknowledged the continued viability of the *Almendarez-Torres* exception relating to proof of prior convictions. *Id.* at 2160 n.1. And in *Gross*, this court held (in a pre-*Ring III* case) only that a defendant's *release status* must be determined by a jury. 201 Ariz. at 47, ¶ 27, 31 P.3d at 821. Thus, the superior court properly found that the fact of Clifton's prior convictions need not be determined by a jury.

## CONCLUSION

**¶24**      For the foregoing reasons, we affirm Clifton's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh