NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERT CURTIS SNODGRASS, *Appellant.*

No. 1 CA-CR 22-0479
FILED 2-6-2024

Appeal from the Superior Court in Maricopa County
No.  CR2020-002256-001
The Honorable Laura M. Reckart, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Damon A. Rossi
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

**¶1**          A jury convicted Robert Curtis Snodgrass of multiple felonies. Snodgrass now appeals, arguing that the superior court erred in sustaining the prosecutor's objection when defense counsel expressed his personal opinion about Snodgrass's veracity in closing argument. Because defense counsel's statement was improper, the court did not err in sustaining the prosecutor's objection. We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**          When Snodgrass married his wife "Sarah" in 2017, Sarah had a seven-year-old daughter "Polly" from a prior relationship.[1]

**¶3**          In 2019, Sarah called the police after finding ten photographs of a child's vagina on Snodgrass's iPad. During the ensuing investigation, a police detective arranged for Sarah to place a call to Snodgrass that was recorded without his knowledge. During this call, Snodgrass denied knowing about the photographs, telling his wife, "I don't know what . . . you're talking about" and "I do not take pictures of my daughter." Over the course of two more recorded calls, however, Snodgrass admitted that he took "a bunch of pictures" of Polly's vagina "two years ago," explaining that he did so "at [Polly's] request" because "she wanted to see what it looked like." He denied that he took the photographs for any sexual or other personal purpose and claimed that he deleted them after showing them to Polly.

**¶4**          A detective then interviewed Snodgrass, who admitted to taking photographs of Polly's vagina on multiple occasions. Snodgrass explained that Polly used to "ask [him] all kinds of things about her privates" and that he took the photographs to help answer her questions. On one occasion, for example, Polly told him that she thought her vagina

---

[1] We use pseudonyms for the victim and her mother pursuant to Arizona Supreme Court Rule 111(i).

"looked funny." After assuring her that her vagina looked "just like any other girl's" or "maybe a little bit better," Snodgrass stated that he "took pictures and showed her them." He claimed, however, to have deleted those photographs "right away."

¶5         Snodgrass further stated that on another occasion Polly called him into the bathroom, where he found her sitting on the floor "with her legs completely spread open." According to Snodgrass, Polly asked him, "Does this look funny?" while pointing to her vagina, which, he observed, was "beet red." Worried that she might have "some kind of infection," Snodgrass claimed, he took photographs and then told Sarah, who took Polly to an urgent care center where she was diagnosed with a urinary tract infection. Snodgrass admitted, however, that he did not tell Sarah about the photographs he took.

¶6         When asked why the photographs were saved on his iPad, Snodgrass stated, "The pictures are on the iPad because I put them there." Snodgrass explained that the photographs were automatically uploaded from his phone to his Google Photos account without his knowledge. After he realized that the photographs had been saved to his Google Photos account, he stated, he imported them to his iPad. When asked why, he replied that he "couldn't figure out how to delete them" from his Google Photos account, and so he "imported them back to the phone." They "were in my phone for quite a while," he stated, before he "sent them to the iPad." He admitted that he "can't answer why" he sent them to his iPad, but insisted, "I do not get off on little girls."

¶7         A grand jury indicted Snodgrass on ten counts of sexual exploitation of a minor and two counts of molestation of a child, each a class 2 felony and Dangerous Crime Against Children under A.R.S. § 13-705. The court later severed the molestation counts, ultimately dismissing them without prejudice.

¶8         At trial, recordings of Snodgrass's phone calls with Sarah and his interview with the detective were introduced as exhibits and played for the jury. Both the detective and Sarah testified, and sanitized versions of the photographs were introduced as exhibits. Snodgrass did not testify.

¶9         During closing argument, defense counsel noted that Snodgrass did not testify at trial but asserted that his testimony was unnecessary because the jurors had already heard directly from him in the recordings that were admitted as exhibits. "He's told you everything," counsel stated. "He told the police everything. He told his wife everything."

**¶10**      Defense counsel then stated that "there's a lot of discussion" about Snodgrass's "explanation and his story" about why the photographs were on his iPad, adding, "And, yes, I believe Robert." When the prosecutor objected, saying "[t]hat's his personal opinion," the court sustained the objection. Defense counsel then proceeded to argue that the State had failed to present sufficient evidence to satisfy its burden of proof beyond a reasonable doubt.

**¶11**      The jury convicted Snodgrass on all ten counts of sexual exploitation of a minor. The court sentenced Snodgrass to presumptive, consecutive sentences of 17 years for each count, with 110 days of presentence incarceration credit. Snodgrass timely appealed, and we have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4021, 13-4033(A)(1).

## DISCUSSION

**¶12**      Snodgrass's sole contention on appeal is that the superior court improperly sustained the State's objection during defense counsel's closing argument. According to Snodgrass, whether "the jury believed" the statements he made to his wife and the detective was "crucial" to his defense that "the photos were not for the purpose of sexual stimulation." Because "the State argued" that "evidence supported" an inference that Snodgrass lied when he claimed that he did not take the photographs "for purposes of sexual stimulation," Snodgrass insists, defense counsel was "entitled to express the opposite opinion that the evidence supported [Snodgrass's] version of events."

**¶13**      We review the superior court's ruling on an objection to a statement made during closing argument for an abuse of discretion. *State v. Pandeli*, 215 Ariz. 514, 525, ¶ 30 (2007); *see also State v. Tims*, 143 Ariz. 196, 199 (1985) ("The trial court is vested with great discretion in the conduct and control of closing argument and will not be overturned on appeal absent an abuse of discretion.").

**¶14**      It is well-established that trial counsel "must refrain from interjecting personal beliefs into the presentation of his case." *United States v. Young*, 470 U.S. 1, 8-9 (1985). This prohibition on expressing personal beliefs encompasses an attorney's opinions about the credibility of witnesses and about the defendant's guilt or innocence. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 216-17, ¶¶ 70, 72-73 (2018) (noting that prosecutor's objection to witness's testimony on the ground that it was "not true" was an "inappropriate" comment "on the veracity of [the] witness");

*State v. Van Den Berg*, 164 Ariz. 192, 196 (App. 1990) ("It is improper and unethical for an attorney in his closing argument to express his personal opinion as to a defendant's guilt or innocence."). Similarly, "counsel may not refer to evidence which is not in the record or 'testify' regarding matters not in evidence." *Acuna Valenzuela*, 245 Ariz. at 217, ¶ 71 (cleaned up). In telling the jury "I believe Robert," defense counsel referred to matters not in evidence by expressing his personal beliefs about the truthfulness of his client's statements. And because, by Snodgrass's own admission, his credibility was "crucial" to his defense, defense counsel's statement "I believe Robert" amounted to a statement of belief in his client's innocence. Defense counsel's statement was, therefore, inappropriate, and the court did not err in sustaining the State's objection to it.

¶15        Noting that "[c]ounsel are afforded wide latitude in closing argument," *State v. Rosas-Hernandez*, 202 Ariz. 212, 219, ¶ 24 (App. 2002), Snodgrass contends that his counsel "merely argued a reasonable inference—that [Snodgrass] told the truth—based upon the evidence presented." By sustaining the State's objection, he argues, the court unfairly "deprived" defense counsel of the "wide latitude" to which he was entitled.

¶16        Snodgrass's characterization of his counsel's statement as a "reasonable inference" from "evidence presented" is inaccurate. Instead of identifying facts in evidence that corroborated or bolstered the credibility of the statements Snodgrass made to his wife and the detective, defense counsel simply referred to those statements and stated, "I believe Robert." As the State correctly observes, defense counsel's statement "is not an inference" but "an improper personal opinion about the evidence." *See State v. Thompson*, 318 P.3d 1221, 1242, ¶ 58 (Utah App. 2014) (holding that prosecutor's statements in closing argument that "I don't think [witness] was credible" and "I think he was being dishonest with you" were "expressions of personal opinion" that "amounted to a form of unsworn, unchecked testimony" that would "induce the jury to trust the prosecutor's judgment rather than to form their own view of the evidence") (cleaned up).

¶17        Snodgrass argues that the "use of a personal pronoun—such as I—is not in and of itself improper," "[n]or does an attorney's use of the phrase 'I believe,' automatically make his point inappropriate."

¶18        Whether a lawyer's use of the personal pronoun in closing argument is improper depends on the context in which it is used. *See State v. Goudeau*, 239 Ariz. 421, 466, ¶ 196 (2016) ("In determining whether an argument is misconduct, . . . [w]e look at the context in which the statements were made.") (cleaned up). In one case, for example, the court held that a

prosecutor did not engage in misconduct by using the phrase "I think" in closing argument because the term simply expressed her uncertainty about the contents of an exhibit that had been admitted. *State v. King*, 417 P.3d 1073, 1085 (Kan. 2018). "The prosecutor was not advancing her personal opinion," the court held, "but simply hedging her statement as she was describing the evidence." *Id.* Likewise, another court rejected a defendant's argument that the prosecutor "improperly revealed her personal opinions" by saying "I think" during closing argument, finding that the prosecutor "use[d] the phrase 'I think' in an innocuous, conversational sense" that did not "suggest an attempt to replace the evidence with the prosecutor's personal judgments." *United States v. Adam*, 70 F.3d 776, 780 (4th Cir. 1995).

**¶19**        Here, by contrast, defense counsel said "I believe Robert" directly after referencing Snodgrass's "explanation and story." Viewed in context, defense counsel's statement cannot reasonably be interpreted as anything other than an expression of counsel's personal opinion about the credibility of his client's "explanation and story."

**¶20**        Snodgrass attempts to distinguish case law condemning vouching by trial counsel by asserting that those cases involve vouching by prosecutors rather than criminal defense attorneys. "[P]rosecutorial vouching," Snodgrass contends, "often places the prestige of the government behind a witness," and so "raises much more serious concerns" than vouching by defense counsel.

**¶21**        Trial counsel's "personal assurances of a witness's veracity" raise heightened concerns when counsel represents the State, since such vouching tends to "place[] the prestige of the government behind its witness." *Acuna Valenzuela*, 245 Ariz. at 217, ¶ 75 (cleaned up). Vouching by counsel for criminal defendants and other private litigants, however, is also improper. *Young*, 470 U.S. at 8-9 ("It is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds," and "[d]efense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case."). Because Snodgrass's counsel improperly expressed his personal opinion in closing argument about the credibility of his client's statements, the superior court did not abuse its discretion in sustaining the State's objection to defense counsel's statement. Snodgrass is not entitled to relief.

**CONCLUSION**

¶22       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA