NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

ALI-MOHAMMAD ZAMANZADEH, *Appellant*.

No. 1 CA-CR 25-0071

FILED 04-24-2026

---

Appeal from the Superior Court in Maricopa County
No. CR2022-001706-001
The Honorable Mark H. Brain, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Laila Ikram
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Brian Y. Furuya joined.

---

**P A T O N,** Judge:

**¶1**       Ali-Mohammad Zamanzadeh ("Zamanzadeh") appeals the superior court's order requiring him to register as a sex offender.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**       In January 2023, a jury convicted Zamanzadeh of sexual abuse for touching a female ultrasound technologist's breast in violation of Arizona Revised Statutes ("A.R.S.") Section 13-1404.  Zamanzadeh denied any wrongdoing during his trial testimony.

**¶3**       At his February 2023 sentencing hearing, the superior court suspended imposition of sentence and placed him on supervised probation for a ten-year term and imposed sex offender terms.  The Adult Probation Department ("APD") recommended the court require Zamanzadeh to register as a sex offender but that the registration requirement be deferred for one year so they could see how he engaged with treatment—specifically, sex offender education and therapy.  The superior court agreed to defer the matter and directed APD to submit an updated recommendation in one year.

**¶4**       Zamanzadeh appealed his conviction and probation imposition after the sentencing hearing, and we affirmed.  *See State v. Zamanzadeh*, No. 1 CA-CR 23-0080, 2024 WL 380014, at *1, ¶ 1 (Ariz. App. Feb. 1, 2024) (mem. decision), (review denied Aug. 19, 2024).

**¶5**       Zamanzadeh submitted to clinical assessments by Mountain Valley Counseling ("Mountain Valley").  In their assessment, Mountain Valley found Zamanzadeh was "evasive" and "highly defensive."  Mountain Valley also noted that Zamanzadeh's "history of viewing pornography, including his viewing of images of sexual violence," should be further evaluated during treatment.  But the assessment acknowledged that Zamanzadeh "has skills which allow him to self-regulate his sexual behavior effectively."  Highlighting his continued assertions that he did

nothing wrong, Mountain Valley emphasized that successful treatment would include Zamanzadeh "increasing his offense responsibility." After the assessment, Zamanzadeh began treatment by going to group therapy. But Zamanzadeh was removed from group therapy due to his disruption of other group members' treatment and his repeated denials of his offense.

¶6 APD ultimately recommended that the court order Zamanzadeh to register as a sex offender. Citing Mountain Valley's assessment, APD reasoned that it was "unclear if Mr. Zamanzadeh will be successful in sex offender treatment." Due to this uncertainty and Zamanzadeh's removal from treatment, APD explained that community safety is better preserved by requiring Zamanzadeh to register as a sex offender.

¶7 The State separately filed a recommendation that Zamanzadeh register as a sex offender. Similar to APD's reasoning, the State informed the court that Zamanzadeh was unable "to engage in any treatment due to his denial of his offense" nor "participate in polygraphs due to physical impediments." The State pointed out that these factors "typically aid in the rehabilitation of an offender, provide a measure to monitor an offender's compliance with probation terms, and provide some level of verification of any re-offense/violation or lack of re-offense/ violation behaviors."

¶8 Before the sex offender registration hearing, Zamanzadeh filed a notice for post-conviction relief ("PCR"), which claimed ineffective assistance of counsel. The court set the deadline to file his petition for December 2, 2024. Zamanzadeh has since filed nine motions requesting extensions to the deadline. He still has yet to file the petition.

¶9 At the sex offender registration hearing, Zamanzadeh moved to preclude APD's recommendation for two reasons. First, he argued the recommendation was based in part on the opinion of his probation officer—an individual not qualified to offer expert testimony under Rules 701 and 702 of the Arizona Rules of Evidence. Second, he argued that APD's recommendation impermissibly relied on Mountain Valley's assessment because the assessment considered Zamanzadeh's denial of his offense, thus violating his right to "exercis[e] his constitutional right to a jury trial."

¶10 The court did not preclude APD's recommendation. The court found "[APD] is entitled to make its recommendations, and I'm gonna do with it what I do with it, and give it the weight it deserves in my judgment, no more, no less." At the registration hearing, Zamanzadeh

called an expert witness who testified that Zamanzadeh was at low risk of reoffending based on the Static-99R test, which determines re-offense probability based on ten questions, including the defendant's number of victims.

**¶11** The court ordered Zamanzadeh to register as a sex offender. Zamanzadeh timely appealed. We have jurisdiction under Sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

**¶12** Zamanzadeh argues for the first time on appeal that the superior court violated his privilege against self-incrimination by failing to preclude APD's recommendation, which, he contends, impermissibly considered his failure to admit guilt.

**¶13** "We review constitutional issues de novo[.]" *State v. Hausner*, 230 Ariz. 60, 82, ¶ 99 (2012).

**¶14** Zamanzadeh did not invoke the privilege against self-incrimination before the superior court; he instead argued APD's recommendation prevented him from "exercising his constitutional right to a jury trial," in violation of his Sixth Amendment rights. U.S. Const. amend. VI (guaranteeing the right to trial by an impartial jury). He also did not challenge the State's recommendation on self-incrimination grounds—or at all—even though it also referenced his failure to admit guilt. We therefore review for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). Zamanzadeh must establish that error exists, that it was fundamental, and prejudicial. *Id.* at 142, ¶ 21.

**¶15** The Fifth Amendment privilege against self-incrimination clause provides that no witness "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Section 10 of the Arizona Constitution similarly provides that "[n]o person shall be compelled in any criminal case to give evidence against himself." Ariz. Const. art. 2, § 10.[1]

---

[1] Although "worded slightly differently . . . , these provisions provide the same rights." *State v. Superior Court of Pima Cnty.*, 149 Ariz. 601, 602 (App. 1986); *State v. Adams*, 181 Ariz. 383, 385 (App. 1995). This decision references these rights together as "the privilege against self-incrimination."

¶16            The privilege against self-incrimination may be asserted in any type of proceeding—"civil, criminal, administrative, or judicial," *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972), so long as the defendant establishes its "two components: incrimination and compulsion." *Lile v. McKune*, 224 F.3d 1175, 1179 (10th Cir. 2000), *rev'd on other grounds*, 536 U.S. 24 (2002).

¶17            Courts, however, have recognized a distinction between the privilege against self-incrimination when asserted during a criminal defendant's "criminal case" as opposed to some other judicial proceeding. *See, e.g., Allen v. Illinois*, 478 U.S. 364, 368-69 (1986). The privilege against self-incrimination in a criminal defendant's ongoing criminal case includes a "full panoply of rights" that entitle a defendant to refuse to "answer any questions at all" without facing punishment for his refusal. *See id.* at 368, 372. By contrast, to prove a violation of the privilege against self-incrimination in a proceeding other than his own criminal case, a declarant must establish that the desired testimony could expose him to criminal prosecution and that the State compelled that testimony. *See Lile*, 224 F.3d at 1179-80; *see also Allen*, 478 U.S. at 368 (the U.S. Supreme Court "has long held that the privilege against self-incrimination . . . 'privileges him not to answer official questions put to him in any other [non-criminal] proceeding . . . where the answers might incriminate him in future criminal proceedings.'") (citation omitted).

¶18            Here, Zamanzadeh argues the former—that the sex offender registration hearing is a part of the criminal case against him, thus entitling him to refuse to answer any questions at all, including those asked in sex offender treatment, without penalty. He also argues that these rights are "particularly guaranteed" while his post-conviction proceeding (in which he has yet to file a petition) is ongoing.

¶19            "The question whether a particular proceeding is criminal for the purposes of the Self-Incrimination Clause is first of all a question of statutory construction." *Allen*, 478 U.S. at 368. "If the intention of the legislature was to impose a criminal punishment, that ends the inquiry." *State v. Trujillo*, 248 Ariz. 473, 477, ¶ 20 (2020) (citation modified). But the U.S. Supreme Court has said that the legislature's intent is not dispositive. *Allen*, 478 U.S. at 369. When there is "the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention that the proceeding be civil, it must be considered criminal and the privilege against self-incrimination must be applied." *Id.* (citation modified).

**¶20**   Arizona's sex offender registration statute does not impose a criminal punishment. A.R.S. § 13-3821. Instead, its purpose is to "provide law enforcement with a valuable tool in locating sex offenders by giving them a current record of the identity and location of such offenders." *Trujillo*, 248 Ariz. at 478, 558, ¶¶ 27, 39 (citation modified) (sex offender registration is not a punishment for purposes of determining whether a jury was required to find facts required to impose registration). In passing Section 13-3821, the Arizona legislature expressly found that "the release of information about sexual predators to public agencies and, under limited circumstances, to the public will further the government's interests of public safety." *Trujillo*, 248 Ariz. at 478, ¶ 28.

**¶21**   Zamanzadeh correctly avers that the Arizona sex offender registration statute is in the criminal code. He thus urges us to extend the "criminal" designation to the sex offender registration hearing. But Zamanzadeh overlooks that our supreme court has expressly held that "despite placement of the registration statutes in the criminal code, the legislature intended to create a civil regulatory scheme," and there is not the "clearest proof" that the effects of registering as a sex offender negate the legislature's intent to do so. *Trujillo*, 248 Ariz. at 479, ¶ 31, 33.

**¶22**   *Trujillo*'s reasoning applies here. The sex offender registration hearing did not expose Zamanzadeh to additional criminal punishment, and he cannot show the requisite proof of punitive effects to supplant the legislature's intent to create a regulatory scheme to protect public safety. Zamanzadeh therefore did not have the "panoply of rights" that would entitle him to refuse to answer questions during sex offender treatment. *See Allen*, 478 U.S. at 372 (the legislature's decision to "provide some of the safeguards applicable in criminal trials cannot itself turn [sex offender registration hearings] into criminal prosecutions requiring the full panoply of rights applicable there").

**¶23**   We are also unpersuaded by Zamanzadeh's argument that his criminal case is "ongoing" because he has filed a notice for PCR, in which he asserts ineffective assistance of counsel—not actual innocence—as the only ground for relief. A defendant's privilege against self-incrimination in a criminal case extends through the appeal of the conviction or sentence in that case. *State v. Gretzler*, 126 Ariz. 60, 88 (1980). Zamanzadeh directs us to *State v. Rosas-Hernandez*, claiming that this rule applies equally to a PCR proceeding. 202 Ariz. 212 (App. 2002). But *Rosas-Hernandez* held that a defendant who pled guilty had a privilege against self-incrimination during his PCR proceeding, because a pleading defendant's first PCR proceeding is "analogous to a direct appeal" by a non-pleading defendant. 202 Ariz. at

216-17, ¶¶ 13-14, 16.  Zamanzadeh is not a "pleading defendant;" he took his case to trial and a jury found him guilty.

¶24          Zamanzadeh had the right to appeal his conviction, and he exercised that right.  We affirmed and our supreme court denied review. *See Zamanzadeh*, No. 1 CA-CR 23-0080, at *1.  His conviction is final and he faces no *ongoing* criminal exposure.  *See In re Grand Jury Subpoena*, 739 F.2d 1354, 1360 (8th Cir. 1984) ("[D]efendant . . . could not possibly incriminate himself in crimes for which he had been convicted.").  Any threat of incrimination in a hypothetical future criminal prosecution against Zamanzadeh is "remote, unlikely, [and] speculative." *McCoy v. C.I.R.*, 696 F.2d 1234, 1236 (9th Cir. 1983); *Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (holding that, in the absence of evidence showing a real likelihood that the State would use their admissions in a future criminal prosecution, requiring sex offenders to admit their offenses as part of treatment does not violate the privilege against self-incrimination).

¶25          The superior court did not violate Zamanzadeh's privilege against self-incrimination by not precluding APD's recommendation. Zamanzadeh has not established error.

**CONCLUSION**

¶26          We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR

7